## In re MASON.

### (District Court, D. Minnesota. September 8, 1890.)

1. UNITED STATES COMMISSIONER—DISOBEDIENCE OF SUBPŒNA—CONTEMPT.
   A commissioner of the circuit court of the United States has no power in a criminal proceeding before him to arrest a witness who refuses to obey a subpœna, and compel him to answer then and there for a contempt.

2. SAME.
   The power to punish for contempt is the highest exercise of judicial power, and is not an incident to the mere exercise of judicial functions; and such power cannot be upheld upon inferences and implications, but must be expressly conferred by law.

At Law. On petition for *habeas corpus*.

*M. D. Munn* and *D. W. Lawler*, for petitioner.

*J. M. Shaw*, for respondent.

NELSON, J. On August 28, 1890, a petition was presented to me signed by John H. Mason for a writ of *habeas corpus*. The petition is sworn-to, and states in substance that said Mason was imprisoned and restrained of his liberty by J. C. Donahower, who is the United States marshal of the district of Minnesota; and that the cause of such confinement or restraint is a certain pretended warrant or order, issued by R. R. Odell, as United States circuit court commissioner, within and for the district of Minnesota, directing the said Donahower, as marshal, to arrest the petitioner for contempt in not obeying an alleged summons of said commissioner, which pretended warrant, as the petitioner is advised, issued without authority of law. A writ of *habeas corpus* was ordered and issued, and the marshal made the following return:

"*United States of America, District of Minnesota—ss.*:

"I hereby certify and return that in obedience to the annexed writ I herewith produce the therein named John H. Mason, and have him now before

the court as commanded in the said writ; and I further certify and return that the said John H. Mason is now in my custody. under and by virtue of a certain writ, issued by one R. R. Odell, Esq., a commissioner of the circuit court of the United States, a true and correct copy of which said writ is hereto attached. J. C. DONAHOWER, U. S. Marshal."

A copy of the warrant attached to the return is as follows:

"U. S. OF AMERICA, DISTRICT OF MINNESOTA, CITY OF MINNEAPOLIS.
"*The President of the United States of America to the Marshal of the District of Minnesota, Greeting:*
"You are hereby commanded to arrest John H. Mason, and immediately have John H. Mason before R. R. Odell, commissioner of the circuit court of the United States, in and for said district, at his office, No. 1121 Northwestern Guaranty Loan Building, in the city of Minneapolis, state of Minnesota, then and there to answer for a contempt by him committed in not attending before R. R. Odell, the said commissioner, though legally summoned.
[L. S.] "Given under my hand and official seal this 27th day of Aug., 1890.
"R. R. ODELL,
"Commissioner of the Circuit Court of the United States for the District of Minnesota."

The petitioner in traverse of the return of the marshal denied that he has committed any contempt as recited, and denies that he was summoned to appear before the said commissioner; and also denies that the commissioner had any legal right or authority to issue the writ, and that his detention and imprisonment are unlawful, and that he is entitled to his discharge. The petition and return of the marshal, with the accompanying papers, not giving sufficient information of the proceedings before the commissioner upon which he acted in issuing his warrant, and causing the arrest of the petitioner to be brought before him, then and there to answer for a contempt by him committed in not attending before him, a writ of *certiorari* was issued for a complete transcript, which has been produced and filed. In the report of the commissioner, a copy of the summons or subpœna is attached, which it is alleged in the warrant the petitioner disobeyed. It is in the following words:

"UNITED STATES OF AMERICA, DISTRICT OF MINNESOTA—ss.
"*The President of the United States of America to the Marshal of the District of Minnesota, Greeting:*
"You are hereby commanded to summon John H. Mason, Andrew Dickey, and O. O. Randall, if they be found in your bailiwick, to be and appear before me, R. R. Odell, a commissioner of the circuit court of the United States for the district of Minnesota aforesaid, at my office, 913, etc., Guaranty Loan Building, city of Minneapolis, in said district, on the 26th of Aug., 1890, at 2 o'clock P. M., to give testimony and the truth to say in a cause pending before me wherein the United States is complainant and William Pulfords and others defendants.
"In behalf of complainant.
"Hereof fail not under penalty of law, and have you then and there this writ.
"Given under my hand this 22d day of Aug., 1890.
"R. R. ODELL,
"Commissioner of the Circuit Court of the United States for the District of Minnesota."

Indorsed:

"I received this writ  *  *  *  and served the same by copy as follows: Personally on J. H. Mason at 10 o'clock A. M., on the 26th day of August, 1890.                         J. C. DONAHOWER, U. S. Marshal.
                                  "Per W. S. DAGGETT, Deputy-Marshal."

Upon this hearing of the *habeas corpus*, the petitioner was called to contradict the return of the officer of personal service. Without considering whether or not the evidence is sufficient to overcome the truth of the return, I will proceed to consider the principal question which has been urged. The substantial and controlling question presented for determination relates to the power of a commissioner of the circuit court of the United States in a criminal proceeding before him to arrest a citizen who refuses to obey a subpœna to appear as a witness and compel. him to answer then and there for a contempt. Before coming to the consideration of this question, it is proper to say that the commissioner's report of the proceedings shows that on the 21st of August, 1890, a complaint, sworn to before another commissioner of the circuit court of the United States in this district, and upon which a warrant was issued for the arrest of certain alleged offenders against the laws of the United States, was presented to Commissioner Odell, and the persons who had been arrested appeared; and, according to the transcript of the proceedings of the commissioner, were arraigned, and gave separate recognizances for their appearance before him on August 22d, at 2 P. M. On that day, defendants with counsel appeared, and a special attorney of the government; and, by agreement and consent of defendants, an adjournment was had until 2 P. M., August 26, 1890. The transcript states that this adjournment was requested by defendants' counsel for the purpose of determining whether defendants wanted an examination, or waived it. On agreement of counsel, the commissioner ordered the defendants to report to him as early as 2 P. M., August 25, 1890, whether they wished examination or not, and the subpœna was issued to John H. Mason, returnable August 26, 1890, which previously appears *verbatim*. Permission was given to the United States attorney to fill other names in the subpœna. On August 25, 1890, counsel notified the commissioner that the defendants would not waive examination, and requested and demanded a hearing; whereupon the commissioner sent notice to the special attorney of the government that the defendants demanded examination. On the 26th of August, at 2 P. M., the accused persons, with their counsel, and the special attorney, Mr. Baxter, appeared, and moved that an adjournment be had until September 5th upon an affidavit which, among other things, stated that two persons, naming them, were material witnesses for the government in this proceeding, without whose testimony it cannot safely proceed to the hearing of this matter, and that he was informed by their employers that they were out of the state, and would not return before September 15, 1890. Other reasons are given in the affidavit for an adjournment, which it is not important to state. The commissioner declined to grant the request of the government for the adjournment, and called John H. Mason who had been subpœnaed

as a witness. The witness not appearing, the marshal was ordered to bring him into court on adjourned day thereof; and cause was adjourned, as stated, until August 27, 1890, at 2 p. m. On the latter day, Mason not appearing, an attachment was issued for his arrest, which is the warrant recited by the marshal in his return to the writ of *habeas corpus* as the authority for holding the petitioner. An adjournment was had until August 28th, at 10 a. m. On this adjourned day, at 2:30 p. m., the government, through the district attorney, moved for a continuance for 10 days, which the commissioner denied; and the district attorney then requested that he be allowed to withdraw the complaints, and that the prisoners be discharged. The commissioner informed the district attorney that this could not be done; whereupon he withdrew, and the commissioner adjourned until the 29th, and a new subpoena was issued for J. H. Mason. The service of this writ of *habeas corpus* was reported by the marshal at that day, through a deputy, to the commissioner. On the 29th, the second subpoena for Mason, issued August 28th, was returned, served, and the commissioner caused the marshal to call John H. Mason, who did not answer. Adjournments were had from day to day, for the reason that said witness was not present, up to the time of the service of the *certiorari*.

The method pursued by the commissioner is not the usual one of conducting criminal accusations. The United States district attorney, or an attorney appointed by the government for a special purpose, according to all authorities, is the official representative of the government in criminal prosecutions. I cite only one: *Confiscation Cases*, 7 Wall. 457. His requests within reasonable limits are entitled to consideration. A commissioner, as a committing magistrate, should never refuse a request by the government for a reasonable time to collect and procure proofs for the purpose of inquiring whether there is a probable cause of an offense against the laws, and particularly so when the proceeding under the state law for the arrest and commitment of offenders gives the state a right to an adjournment on proper showing. And it can seldom happen that a commissioner will feel bound to investigate the charges in case the district attorney declines to prosecute. Of course, when a criminal prosecution has been instituted before a commissioner, and the accused persons have been arrested, and the time fixed for the examination, the district attorney has no authority to dismiss the proceedings, and an unwillingness of the government representative to proceed will not preclude the commissioner from investigating charges brought before him properly authenticated; but it has been found by experience that it is more conducive to the orderly administration of justice, for the protection of the citizen, and the complete vindication of the laws in discovering and punishing offenders, to let the government representative, who is appointed for that purpose, and upon whom the duty is imposed of obtaining the proofs, inquire whether there is probable cause under the evidence collected of any offense against the laws, and conduct an examination, if necessary. The report of the commissioner shows that the government representative declined to act in the prosecution before the

commissioner in its present form; and it becomes a serious question whether the ends of justice demand an examination when the law officers of the government, under oath, declare that important testimony cannot be then obtained. What purpose would be subserved by such a course of proceeding? If the evidence on an examination is insufficient to hold the accused party, or no evidence is produced, he must be discharged; but such discharge is not a finality to investigation for the same offense, and it may well be doubted whether the watchful solicitude of the law over the personal liberty and security of the citizen necessarily imposes on the commissioner the duty of investigating alleged charges on evidence regarded by the government representative as insufficient. The government should be held to reasonable diligence in procuring and producing proofs, and if no proofs are presented the accused should be discharged; but it would seem most unusual, if not indiscreet, for a commissioner to refuse the government a reasonable opportunity to collect the testimony. In the case of *U. S.* v. *Worms*, 4 Blatchf. 332, the defendants, on a preliminary warrant for examination, were committed for an unlimited time. They were imprisoned some two months without any steps being taken for their examination. The court on an application for their discharge decided that the adjournment should be for a time certain, and that the commitment was erroneous, but that, where cause is shown on the part of the government for further delay to procure testimony, great diligence should be required in its procurement, and, in case of neglect, the commissioner should discharge the accused persons, and while the court considered the imprisonment exceptionable and irregular, it refrained even from discharging the parties on the government representative agreeing to a speedy hearing of the case. The commissioner, however, considering that his duty required the continuance of the examination, proceeded on his own motion to subpœna witnesses in behalf of the government, and to arrest for contempt a disobedience of his summons. I listened attentively to the very able and ingenious argument of Judge Shaw, in favor of sustaining the power of the commissioner to arrest and punish for contempt; and if he is correct in the construction of section 1014, Rev. St. U. S., that all the laws of the state of Minnesota which give justices of the peace special powers, among which is the power to punish witnesses for contempt in the examination of offenders, are conferred by implication upon commissioners by that section, then his position is impregnable. Certainly there is no express language giving that power. It is necessary then to look to this section and see if the broad construction contended for is correct. By that section, undoubtedly, congress intended to assimilate the proceedings for the arrest, imprisonment, and bail, as the case may be, to the mode of procedure prescribed by the laws of the several states, and as exercised by justices of the peace when acting as arresting, examining, and committing magistrates. It is then claimed by counsel that the power to examine gives the right to subpœna witnesses, and, as an incident to it, the power to enforce obedience to the subpœna by arrest and punishment for contempt.

To arrest and punish for a contempt is the highest exercise of judicial power, and belongs to judges of courts of record, or superior courts. Where jurisdiction exists there can be no review. A pardon by the executive is in most cases the mode of release. This power is not, and never has been, an incident to the mere exercise of judicial function, and such power cannot be upheld upon inferences and implications, but must be expressly conferred by law. A very learned, elaborate, and well-considered discussion of this question is found in the case of *In re Kerrigan*, 33 N. J. Law, 344, which was approved in *Rhinehart* v. *Lance*, 43 N. J. Law, 311. In this case the recorder of the city of Hoboken, by law, possessed all powers conferred on justices of the peace in the several counties of the state. The justices of the peace had the power by law to arrest, examine, and commit offenders; and it was claimed that, this being a judicial function, the authority to punish for contempt was incident to its exercise. While admitting that some authoritative text-writers seem to have supposed this was the law, the learned court pointed out that this assumption was destitute of authority, and was explained by the indefinite use of the word "commit," (or "imprison," which is the language under section 1014,) and in not discriminating between its use in the sense of committing in default of bail to answer before a criminal court on indictment, and the power to commit by way of punishment. The learned judge, speaking for the court, shows that by the common law only courts of record could punish contempts, and that the powers of a justice of the peace at common law were originally ministerial entirely, consisting chiefly in preserving the peace, receiving complaints, issuing summons or warrant, taking the examination of witnesses, and of the informant, and bailing or committing the accused, but no English case is found directly asserting the power to punish for contempt. But there is authority of the courts of the United States directly upon this question. In *Re Perkins*, on *habeas corpus* before Circuit Court Judge Gresham, the particular question raised here was decided. Judge Gresham said:

" It is a stretch of language to say that the punishment of a witness for contempt, and by a commissioner, is a necessary part of the usual mode of process against offenders, or essential to the exercise of any power expressly conferred on him by the federal law."

So in *Ex Parte Doll*, before the late United States Judge Cadwalader, in 1869, (7 Phila. 595.) Doll had been arrested on complaint made by an officer of the internal revenue for failing to appear and testify in relation to his income. At the examination, before the commissioner, an order was made that "Doll produce his books before the commissioner, or be committed for contempt." On refusal to comply, he was committed. Upon the hearing, the power of the commissioner to arrest and punish for contempt was raised. The judge, in discharging the prisoner for the irregular proceeding of the commissioner, *inter alia*, said that—

" He very much doubted even the power of congress to invest a commissioner with the authority in a proceeding originally instituted before him to summarily commit a citizen for an alleged contempt. This was an exercise of the

judicial power of the United States, which, under the constitution, could not be intrusted to an officer appointed and holding his office in the manner in which these commissioners were appointed and held their offices."

In the celebrated case of *Kilbourn* v. *Thompson*, involving the question of the power of the congress to arrest and punish a witness for contempt (103 U. S. 182) in refusing to answer questions before a committee of the house, Justice MILLER, speaking for the court, among other things, said:

"The constitution declares that no person shall be deprived of his life, liberty, or property, without due process of law, and it has been repeatedly held by the United States supreme court that this means a trial in which the rights of the party shall be decided by a court of justice appointed by law and governed by the rules of law previously established."

I agree with Judge GRESHAM that—

"We only look to the state of Indiana [in this case Minnesota] to ascertain the mode in which powers expressly conferred on commissioners by the federal statute shall be exercised, * * * and it is not necessary to the due exercise of the power to arrest, examine, and bail that commissioners should have authority to punish for contempt."

It is stated that the commissioner had the authority to arrest the petitioner for the purpose of taking him before some court having authority to punish for contempt, and that he was about to do this. I can see no distinction between the power to decide that a contempt has been committed, and forthwith arrest the person, and the authority to punish. The arrest is for the purpose of punishment, and if the commissioner had no power to punish he could not deprive the petitioner of his liberty, however short the time might be.

I have given this case such examination and reflection as opportunity has afforded, and have reached the conclusion that the commissioner had no jurisdiction to issue a warrant for the arrest of the petitioner. If wrong, there is a higher tribunal which can correct the error. The petitioner is discharged.