## UNITED STATES v. PRATT.

### (Third Division.   Fairbanks.   November 11, 1907.)

#### No. 275, Criminal.

**1.** CONTEMPT (§ 10*)—ATTORNEY—PREVENTING ATTENDANCE OF PARTY OR WITNESS.

The plaintiff in Fleming v. Leber attempted to take the deposition of the defendant under the provisions of section 644 and section 652 of the Code of Civil Procedure.   The subpœna was issued by the clerk of the district court and, with the summons and complaint in the action, and the notice provided for in section 652, was served on Leber personally, commanding him to appear before C. E. Wright, a notary public, four days thereafter, for that purpose, and his fees as a witness were paid to him.   Leber employed Pratt, an attorney, who counseled and advised him that the service of the subpœna was void, because not issued by the notary public, and also advised him not to attend before the notary.   Leber was anxious to avoid the process, and paid the attorney $250 fee as a retainer, with a promise of an equal amount later.   Acting upon his attorney's instructions as to his course of action, Leber left the country and refused to attend for examination.   Pratt, in his answer to the accusation for contempt, denounced the issuance of the subpœna, asserted his entire familiarity with the rules of law governing such cases, and asserted that his action was correct, and that he would do it again under similar circumstances.   *Held*, that Pratt was guilty of contempt of court.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 21, 27; Dec. Dig. § 10.*]

**2.** CONTEMPT (§ 10*)—ATTORNEY—ADVICE TO CLIENT.

Where an attorney, wrongfully, corruptly, and actuated by a spirit of resistance, counsels, advises, and instructs his client to willfully disobey the command of a subpœna lawfully issued and served, the attorney is guilty of contempt of court, under the Alaska Code.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. § 21; Dec. Dig. § 10.*]

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

3. DEPOSITIONS (§ 38*)—SUBPŒNA—JURISDICTION.

The clerk of the district court has power to issue a subpœna to require a defendant to appear before a notary public and give his deposition, under sections 644 and 652 of the Alaska Code of Civil Procedure.

[Ed. Note.—For other cases, see Depositions, Dec. Dig. § 38.*]

4. CONTEMPT (§ 36*)—PROCEEDINGS—AUTHORITY OF NOTARY PUBLIC.

A notary public, sitting as an examiner to take depositions, is not a court, but an officer of the court from which the process issued. He has no power to punish for contempt one who disobeys the subpœna to attend and testify. The court wherein the original cause is pending has jurisdiction to punish for the contempt.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 100, 107–109; Dec. Dig. § 36.*]

5. JUDGES (§ 49*)—VENUE—CHANGE—DISQUALIFICATION.

The defendant, on trial for contempt of court for instructing his client to disobey a subpœna commanding the client to appear before a notary public and give his deposition in a case where he was a party, filed written objections to the presiding judge's qualifications, alleging bias and prejudice, but not stating any fact or act on the part of the judge. *Held*, that the disqualifications of the judge under the Alaska Code are statutory (sections 707, 708, Code of Civil Procedure), and that mere charges of bias and prejudice on the part of the judge are not sufficient to disqualify him from presiding at the trial.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 187, 188; Dec. Dig. § 49.*]

This is a contempt proceeding. The affidavit upon which it is based was made by Jeremiah Cousby, Assistant United States District Attorney, and filed and presented to the court on October 23, 1907, and it alleges: That on the 8th day of November, 1906, an action was commenced in this court, entitled "Robert H. Fleming, Plaintiff, v. R. E. Leber, Administrator of the Estate of Victor Baubet, Deceased, and R. E. Leber, Defendants," and No. 622, by the filing of the complaint

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

3 A.R.—26

and the issuance of summons by the clerk. The marshal on that day served the summons on Leber, in Fairbanks, by delivering to him a true copy thereof, together with a copy of the complaint, certified to by the attorney for the plaintiff, and that due return of such service was made and filed in the clerk's office. Thereafter, and on said day, notice of the taking of the deposition of Leber, in that action, was served on Leber in Fairbanks, by delivering to him a true and correct copy thereof, signed by plaintiff's attorney and that the said notice of taking the deposition of the said R. E. Leber contained the time and place of the examination, the name of the officer and the witness, and was given four days before the day of the examination. That a subpœna was duly issued out of this court, in said action No. 622, at the instance of plaintiff, in the manner and form prescribed by law, and under the hand of the clerk of the said court and the seal thereof, requiring the said R. E. Leber to appear before C. E. Wright, a notary public in and for the territory of Alaska, residing at the town of Fairbanks therein, to be examined by deposition in said action No. 622 as a party and a witness in said action, at the instance of the plaintiff as an adverse party therein, and the affidavit then sets out a copy of the subpœna so served on Leber. That said subpœna was on said 8th day of November, 1906, and after the service of the summons and certified copy of complaint in said action, duly served upon the said R. E. Leber, at Fairbanks, by the marshal, by then and there reading and showing the original subpœna, and delivering a copy to the said R. E. Leber personally, and by giving him, at the same time, $4.50, as the fees to which he was entitled for travel to and from the place designated and for one day's attendance thereat, as appears from the marshal's return filed with the clerk.

That thereupon Leber, on said 8th day of November, 1906, took the said copies of the summons, complaint, notice of

taking deposition, and subpœna, so served upon him in said action by the marshal, and called upon the defendant, Louis K. Pratt, who was at said time, and now is, a practicing attorney at law before the bar of this court, and exhibited said copies to him, and asked Pratt whether he (Leber) was required thereunder to appear before the said notary public, C. E. Wright, at the time and place designated in said notice and subpœna, and to be examined then and there by deposition in said action, as specified in said copies. "Whereupon the said Louis K. Pratt, wrongfully, corruptly, and actuated by a spirit of resistance, counseled, advised, and instructed the said R. E. Leber to disobey the said subpœna, and not to attend before the said officer, as required thereunder, or at all." That Leber did not attend, and disobeyed the subpœna, for the reason that he had been advised by the said Louis K. Pratt to do so. The affidavit contains portions of the evidence of both Pratt and Leber in a former contempt case against Leber, in which both testify that Pratt instructed Leber not to go near the notary—to disobey the subpœna.

Upon this affidavit being presented and read, the court issued a warrant for the arrest of Louis K. Pratt for contempt. He gave bond in the sum of $500. On October 26, 1907, he filed an answer to the allegations in the charging affidavit, in which he admitted "that the recital of facts contained in the said affidavit is substantially correct, with the following exceptions," and then pointed out that in the copies of the notice and subpœna served on Leber on November 8, 1906, requiring his attendance before the notary, the hour was fixed at 10 o'clock, while in the originals it was 11 o'clock; that Leber was not paid sufficient fees by the marshal to cover his mileage; that a mistake was made in quoting an immaterial part of his former evidence. He then denies that in so counseling Leber to disobey the subpœna he did so "wrongfully, corruptly, and actuated by a spirit of resistance"; that he had no doubt

then, and has no doubt now, that the said supposed subpœna is absolutely void, because not issued or authenticated by the notary public, and because the clerk of this court had no authority whatever to issue it, because it was oppressive and an abuse of judicial process, and for other similar reasons. He closed the statement of his reasons for believing the process of this court to be void with the allegation:

"And this defendant now again asserts that his advice to Leber was correct, intelligent, and legal, and if put in the same position again he would give the same advice, believing and knowing that the same was good in law and in line with a proper administration of justice. Defendant says that, at the time he gave Mr. Leber the advice above referred to with reference to the said subpœna, he was thoroughly familiar with, and relied for the correctness of his position upon, the following, among other, authorities: Chapter 59, §§ 625–627, and section 632, Carter's Alaska Code; In re Cubberly, 39 Kan. 291, 18 Pac. 173; In re Davis, 38 Kan. 408, 16 Pac. 790; Ex parte Lezinsky et al., 72 Cal. 510, 14 Pac. 104; Burns v. Sup. Ct. of San Francisco, 140 Cal. 1, 73 Pac. 597."

Mr. Pratt also testified that he was influenced in his action by the fact that his client was ready, and desired just then, to leave the territory of Alaska. The client also paid him $250, and agreed to pay him an equal sum at a later date.

The case was called for trial on November 1, 1907. A plea of not guilty was entered. Defendant filed a motion for change of venue to another judge, alleging bias and prejudice against the presiding judge, which was overruled. Whereupon the court heard the evidence offered by the United States and the defendant, and the arguments of counsel on the questions of law involved therein.

Jeremiah Cousby, Asst. U. S. Dist. Atty.

T. A. Marquam, for defendant.

WICKERSHAM, District Judge. In the case of In re Watts and Sachs, 190 U. S. 1, 29, 35, 23 Sup. Ct. 718, 725,

727, 47 L. Ed. 933, the Supreme Court of the United States thus states the general rule in cases like that at bar:

"In the ordinary case of advice to clients, if an attorney acts in good faith and in the honest belief that his advice is well founded and in the just interests of his client, he cannot be held liable for error in judgment. The preservation of the independence of the bar is too vital to the due administration of justice to allow of the application of any other general rule. * * * State courts are entitled to the assistance of the gentlemen of the bar in the maintenance of their dignity and jurisdiction, and the fearless discharge of their duty by the latter should not be shaken by liability to punishment for mere errors of judgment in rendering such assistance."

While the general rule is thus tender and just in defense of these intimate and necessary officers of the court, the law is also stern and quick to punish when they forget their duty and their oath, and treat the process of the court with defiance and contempt. Being learned in the law and officers of the court, they are presumed to know the necessity for loyalty to both, and to know the limit which separates duty from defiance and contempt. An error of judgment, made in good faith and in an honest belief of its correctness, is excusable. Intentional defiance of the process of the court, in bad faith and without honesty of purpose, is a contempt, and subjects an attorney, as well as a layman, to punishment.

Section 609 of the Code of Civil Procedure of Alaska provides:

"Sec. 609. Contempts Defined.—The following acts or omissions, in respect to a court of justice, or proceedings therein, are deemed to be contempts of the authority of the court: * * * Third. Misbehavior in office, or other wilful neglect or violation of duty, by an attorney, clerk, marshal, or other person appointed or selected to perform a judicial or ministerial service. * * * Fifth. Disobedience of any lawful judgment, order, or process of the court. * * * Ninth. Any other unlawful interference with the process or proceedings of the court. Tenth. Disobedience of a subpoena duly served, or refusing to be sworn, or answer as a witness."

Section 632 of the Code of Alaska also provides:

"Sec. 632. Disobedience to Subpœna.—Disobedience to a subpœna, or a refusal to be sworn, or to answer as a witness, or to subscribe an affidavit or deposition when required, may be punished as a contempt by the court or officer before whom he is required to attend or the refusal takes place, and if the witness be a party, his complaint, answer, or reply may be stricken out."

A willful refusal to obey the command of a subpœna lawfully issued and served constitutes a contempt of court. The defendant, Pratt, however, is not accused of disobeying the subpœna, but of having wrongfully, corruptly, and actuated by a spirit of resistance, counseled, advised, and instructed the said R. E. Leber to disobey the said subpœna, and not to attend before the said officer, as required thereunder, or at all, which instruction Leber obeyed.

An attorney has the right to advise his client as to the validity of an order of court, or of a writ issued under its authority, which affects the client's interests, and his advice to the effect that such order or writ is illegal and void, if given in good faith, will not render him liable for contempt, because of an error in judgment; but he is guilty of contempt if he goes beyond the right to advise in matters of law, and, actuated by a spirit of resistance, counsels or conspires with his client or others to disobey an order of court and obstruct its enforcement. Anderson v. Comptois; In re Du Bose, 109 Fed. 971, 48 C. C. A. 1; In re Noyes, In re Geary, In re Wood, In re Frost, 121 Fed. 209, 57 C. C. A. 445.

It has been held that orders made by a court having no jurisdiction to make them may be disregarded without liability to process for contempt. In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402; U. S. v. Shipp, 203 U. S. 563, 27 Sup. Ct. 165, 51 L. Ed. 319. Where, also, a court is without jurisdiction to compel a witness to appear and testify on deposition, a conviction for contempt for such refusal is illegal and void,

and the prisoner will be entitled to be discharged on habeas corpus. Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117. The defendant herein contends that this court was without jurisdiction to issue the subpœna, by its clerk, to compel Leber to appear before the notary public and give his testimony by deposition; that for want of such jurisdiction the subpœna was void, and could be disregarded by Leber; and contends that that failure of jurisdiction protected him from contempt in instructing Leber not to obey the void writ. This defense admits this: If this court had jurisdiction to issue the subpœna, by its clerk, to compel Leber to appear before the notary public and give his testimony by deposition, then Leber's refusal to do so, his disobedience to such writ, was a contempt of the process of this court, and if the fact be that the defendant, Pratt, counseled, advised, and instructed Leber to willfully disobey the subpœna, in a spirit of resistance to the process of this court, the defendant is guilty of contempt and liable to punishment therefor. This brings up for consideration the question of the jurisdiction of this court, by its clerk, to issue the subpœna on November 8, 1906, commanding Leber to appear before the notary public and give his testimony by deposition. Did the clerk have authority in law to issue that writ, or was it void for want of jurisdiction?

The writ of subpœna was issued in the original case of Fleming v. Leber, No. 622. An examination of the certified copy of the complaint in that case, now in the record herein, discloses that it was a suit in equity for discovery and accounting. This record discloses that that complaint and summons was served on Leber personally in Fairbanks on November 8, 1906. The record also discloses that on the same day and place personal service was made on him of a notice to take his deposition as an adverse party and witness in the case, and therewith the subpœna, issued by the clerk of this court, was personally served on him, commanding him to appear at the time

and place fixed therein, more than three, to wit, four, days subsequent to the day of service, before C. E. Wright, a notary public, in Fairbanks, for the taking of his deposition. The subpœna was in the usual form, tested in the name of the judge, signed by the clerk, and stamped with the seal of this court. The only objection made to the validity of the subpœna is that the court from which it issued had no jurisdiction to issue it.

In Pacey v. McKinney, 125 Fed. 675, 60 C. C. A. 365, the plaintiff in error complained of the action of the lower court in refusing to continue the case to enable him to secure the attendance of witnesses who were referred to in the complaint by the general words "agents and representatives." In sustaining this action of the lower court the Circuit Court of Appeals, Ninth Circuit, said:

"The complaint had been filed nearly six months when the case was called for trial. The summons was served upon the plaintiff in error June 24, 1901. At any time after his appearance he might have obtained the deposition of the defendant in error (Code Civ. Proc. Alaska, § 644; Act June 6, 1900, c. 786, 31 Stat. 434), and have ascertained the names of the alleged agents and representatives of the plaintiff in error and all the facts necessary to prepare for the defense, or he might have demurred to the complaint within the time provided by law, and secured, as he afterwards did, the information contained in the amended complaint, and, so being informed, have secured the evidence of the absent witnesses in time for the trial. Failing to use due diligence in obtaining information as to the names of the parties alleged in the complaint to be his agents and representatives, he was not entitled to a continuance of the case to obtain their evidence."

Section 644 of the Code of Civil Procedure, cited by the Circuit Court of Appeals, provides:

"Sec. 644. The testimony of a witness in the district may be taken by deposition, in an action, at any time after the service of the summons, or the appearance of the defendant; and in a special proceeding after a question of fact has arisen therein, in the following cases:

First. When the witness is a party to the action or proceeding, by the adverse party. * * * Fifth. When the testimony is required upon a motion, or in any other case where the oral examination of the witness is not required."

In the case at bar the record discloses that the witness Leber resided in the district, that an action was pending, and the complaint and summons served. The witness wanted was a party defendant to the action, and his deposition was required by the adverse party. Under the rule in Pacey v. McKinney, the adverse party was obliged by the statute to act promptly, and could by deposition under that section ascertain all the facts necessary to prepare for the trial of his case, and he failed therein at his peril.

The procedure under section 644 is pointed out by section 652:

"Sec. 652. Either party may take the testimony of a witness in the district by deposition, in the cases allowed by this Code, before the clerk of a court of record, or other person authorized to administer oaths, or giving the adverse party previous notice of the time and place of the examination, the name of the officer, and the witness; such notice shall be given at least three days before the day of examination, if the distance of the place of examination from the residence of the person to whom notice is given does not exceed twenty-five miles, unless the court or judge thereof by order prescribe a shorter time. When a shorter time is prescribed the order shall be served with the notice."

The record in this case shows that the plaintiff in Fleming v. Leber, No. 622, desired to take the deposition of Leber as a witness, in the district, before C. E. Wright, a notary public and a person authorized to administer oaths and take depositions (Pol. Code, p. 139, § 18, subd. 3; section 693, Carter's Alaska Code); that the plaintiff gave the defendant Leber, administrator, and Leber, personally, four days' previous notice of the time and place of the examination, the name of the officer, and the witness; and the evidence discloses that the de-

fendant was served in Fairbanks, within one mile of the place of examination, and that the residence of the defendant was not to exceed 30 miles from the place of examination.

The method of securing the attendance of the witness is pointed out in chapter 59, and section 624 thereof provides:

"Sec. 624. Subpœna for Witness Defined.—The process by which the attendance of a witness is required is a subpœna. It is a writ directed to a person and requiring his attendance, at a particular time and place, to testify as a witness in a particular action, suit, or proceeding therein specified, on behalf of a particular party therein mentioned. It may also require him to bring with him any books, documents, or other things under his control which he is bound by law to produce in evidence."

It is not seriously disputed that every necessary step in the suit of Fleming v. Leber to secure the deposition of the adversary witness, Leber, was taken, until we reach the issuance of the subpœna to compel his attendance before Wright, the notary public. The subpœna was issued by the clerk of the district court, in the suit of Fleming v. Leber, and commanded the witness to appear before the notary at a time and place mentioned therein. It is contended by the defendant that it should have been issued and signed by the notary public, that the clerk of this court was without jurisdiction to issue it, and that it was therefore void, and might be disregarded by the witness served. Jurisdiction is said to rest on the power of the clerk to issue the writ, and its validity depends upon the construction to be given to section 625, which reads as follows:

"Sec. 625. How and by Whom Issued.—The subpœna is as follows: First. To require attendance before a court of record, or at the trial of an issue therein, or out of such court in an action, suit, or proceeding pending therein, by the clerk of such court. Second. To require attendance before a commissioner appointed to take testimony by a court of the United States, or any state or territory, or any foreign country by any clerk of a court of record, in places within the jurisdiction of such court. Third. To require attendance before the judge, justice of the peace, or other person authorized by law to take

the testimony or affidavit of another, by such judge, justice of the peace, or other person, in the places within their respective jurisdiction."

, I think there can be no doubt of the jurisdiction of the notary public to take the deposition, because the third subdivision of section 18 of the Political Code (page 139, Carter's Alaska Codes) provides that it shall be the duty of a notary public "to take depositions, and affidavits and administer oaths and affirmations in all matters incident to the duties of the office or to be used before any court, judge or officer," and section 639 of the Code of Civil Procedure confirms the power; nor is any question raised in this case whether or not the notary public had authority to issue the subpœna (Wheeler v. Burckhardt, 34 Or. 504, 56 Pac. 644), but it is urged by counsel for the government that the clerk of the district court had that power, without regard to the power of the notary public.

Whatever statutory power the clerk has must be found in the first subdivision of section 625. Both sides appeal to this subdivision; the defendant to prove that the clerk had not such power, and the government to prove that he had. Counsel for defendant contends that a proper construction of that sentence requires the repetition of the idea "at the trial of an issue therein" in the third clause, so that the sentence should read, in meaning and construction, as if it were actually written:

"Sec. 625. The subpœna is issued as follows: (1) To require the attendance before a court of record, or at the trial of an issue therein, or *at the trial of an issue out of* such court in an action, suit, or proceeding pending therein, by the clerk of such court."

Counsel for defendant urges that this construction would make the clerk's action void, because there was no issue for trial before the notary public, and therefore no authority in the clerk to grant the writ. There might be some merit in the conclusion if the construction upon which it is based were

admitted. The first objection to that construction of the sentence is that it is meaningless when considered in relation to all other provisions of the Code. There is but one tribunal in Alaska under our Code which has power or authority to try an issue out of a court of record, and that is a referee under the provisions of chapter 20 of the Code of Civil Procedure, which provides that:

"Sec. 211. Trial of Issue may be Referred.—All or any of the issues in the action, whether of fact or law, or both, may be referred to a referee or referees upon the written consent of the parties"

—or by the court in certain cases, and section 216 provides that:

"Trial by referee shall be conducted in the same manner as a trial by the court. They shall have the same power to grant adjournments, administer oaths, to preserve order, and to punish all violations thereof upon such trial, and to compel the attendance of witnesses, and to punish them for nonattendance or refusal to be sworn or testify, as is possessed by the court."

Whether or not the power "to compel the attendance of witnesses" necessarily means by issuing subpœnas, or whether they should be issued by the clerk, need not be decided in this case. It is doubtful, too, if a trial before a referee is the trial of an issue *out of* court. The referee becomes an auxiliary to the court for the trial of that issue. Strictly speaking there is no such a procedure in Alaska as the trial of an issue of law or fact in an action, suit, or proceeding pending in the district court anywhere out of the court. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word, and that every part of a statute must be construed in connection with the whole, so as to make all the parts harmonize, if possible, and give meaning to each. Washington Market Co. v. Hoffman, 101 U. S. 112, 25 L. Ed. 782; Platt v. Union Pac. R. R. Co., 99 U. S. 48, 25 L. Ed. 424. The construction contended for by the defend-

ant would insert a meaningless clause into the body of the sentence, without significance or effect.

Counsel for the government contends that the sentence under consideration means that the clerk of the court has power and authority to issue the writ of subpœna under the seal of said court: (1) To require the attendance of a witness before the district court; or (2) to require the attendance of a witness at the trial of an issue therein; or (3) to require the attendance of a witness out of the district court in an action, suit, or proceeding pending therein, either before a referee or an examiner to take depositions.

The principal idea in the sentence is that requiring a witness to attend: (1) *In* a court of record, generally; and (2) *out of* a court of record, in an action, suit, or proceeding pending therein. If the parenthetical clause, "or at the trial of an issue therein," is left out, it conveys the general intention of the Legislature as follows:

"The subpœna is issued as follows: (1) To require the attendance before a court of record, * * * or out of such court in an action, suit, or proceeding pending therein, by the clerk of such court."

The main purpose is that of requiring the attendance of the witness, not the trial of an issue, and the sentence has the meaning as if written:

"To require attendance before a court of record, or at the trial of an issue therein—to wit, in the court of record—or to require the attendance of the witness out of such court of record in an action, suit, or proceeding pending therein, to wit, in the court of record, by the clerk of the court of record."

It is my judgment that the proper construction to be given to the sentence requires the court to hold that the clerk of the court had authority to issue a subpœna to require the attendance of the witness before the notary public as an examiner in taking the deposition. Such a construction appears to me to accord with the rules of grammar and the plain intendment

and meaning of the language used in the statute. It also accords with the long-established rule of chancery practice. The seventy-eighth rule of practice of the courts of equity of the United States contains the very essence of the statute of Alaska on the point in question. It reads as follows:

"78. Witnesses who live within the district may, upon due notice to the opposite party, be summoned to appear before the commissioner appointed to take testimony, or before a master or examiner appointed in any cause, by subpœna in the usual form, which may be issued by the clerk in blank, and filled up by the party praying the same, or by the commissioner, master, or examiner, requiring the attendance of the witnesses at the time and place specified, who shall be allowed for attendance the same compensation as for attendance in court; and if any witness shall refuse to appear or give evidence it shall be deemed a contempt of the court, which being certified to the clerk's office by the commissioner, master, or examiner, an attachment may issue thereupon by order of the court or of any judge thereof, in the same manner as if the contempt were for not attending, or for refusing to give testimony in the court. But nothing herein contained shall prevent the examination of a witness viva voce when produced in open court, if the court shall, in its discretion, deem it advisable."

That seems to be the rule in the Circuit Court of Appeals. Rule 8, C. C. A. (150 Fed. xxvii, 79 C. C. A. xxvii). It was the rule in the English chancery court.

"For that purpose a commissioner, usually styled an 'examiner,' was appointed by the court to take the answers of the witnesses to certain interrogatories settled by the court. The witnesses were compelled by subpœna to attend and submit to the examination. 3 Blackstone, Comm. 449. Disobedience of the subpœna was a contempt (Id. 443) punishable by imprisonment until he performed the act commanded therein (Id. 444). The subpœna was issued by the court, not by the examiner. Dan. Ch. Prac. pp. 906, 907. * * * The matter of the taking of depositions was one of the ordinary and most frequent proceedings of a court of equity, and the practice was controlled by the rules of court. Dan. Ch. Prac. 885, 888." Burns v. Sup. Ct., 140 Cal. 1, 6, 73 Pac. 597, 600.

It is my judgment that the clerk of this court had power to issue the writ of subpoena out of and under the seal of this court to compel the witness Leber to attend before the examiner, the notary public, and give his testimony by deposition. That construction upholds the jurisdiction of this court to compel witnesses to attend and give their testimony in actions, suits, or proceedings pending herein. It accords with the plain language of the statute, gives effect and significance to what would otherwise be meaningless, and follows the long-established rule of chancery practice.

The power to punish for contempt is the highest exercise of judicial power, and is not an incident to the mere exercise of judicial functions; and such power cannot be upheld upon inferences and implications, but must be expressly conferred by law. In re Mason (D. C.) 43 Fed. 510. While a United States commissioner is a part of the court appointing him, and will be protected in the exercise of his powers as such officer, he has not the power to punish for contempt, and disobedience to his authority should be reported to the court appointing him. In re Perkins (D. C.) 100 Fed. 950. A notary public sitting as an examiner to take the deposition of a witness in Alaska is not a court, and has no power to punish a witness who disobeys a subpoena to appear and give testimony, but should report such disobedience to the court wherein the action, suit, or proceeding is pending. Chapter 58, §§ 711, 712, 1013, 1014, of the Alaska Codes; U. S. v. Anonymous (C. C.) 21 Fed. 761; Ex parte Perkins (C. C.) 29 Fed. 900; In re Mason (D. C.) 43 Fed. 510; In re Spofford (C. C.) 62 Fed. 443; In re Perkins (D. C.) 100 Fed. 950.

"As we view the provisions of section 823, supra [Alaska Code, § 652], it is unnecessary to procure an order from the court or judge to take the testimony of a witness in this state by deposition in an action then pending in such court, unless the exigencies of the case demand that his testimony should be taken in a shorter period than

that prescribed by law." Wheeler v. Burckhardt, 34 Or. 504, 56 Pac. 644.

The defendant complains of the process in question in his answer, and alleges that it is void, "because it was oppressive and an abuse of judicial process; because it required the said Leber to produce all of his private books, papers, documents, and everything else connected with the case in the office of the attorney of his opponent, four days after the action was commenced; because it was in the nature of an unreasonable and unwarranted search into his private affairs, was evidently a mere fishing expedition upon the part of the plaintiff and his attorney," etc. When the defendant, as Leber's attorney, discovered, as he alleges he did, that the writ was oppressive, because it required his client to appear in his adversary's office for examination, and because the duces tecum clause was too broad, he should have applied to the court to withdraw the writ, or make it more conformable to equity and the rules of practice. Instead of giving the court an opportunity to inspect and amend its process, however, he adjudged it void and instructed his client to treat it with defiance. That it might be used in an oppressive manner in some other case, or even in the case at bar, does not render the writ void and subject to be disregarded.

"It is argued that if a party, at the instance of his adversary, can be compelled to give his deposition before a person who has not been commissioned by the court in which the action is pending, and in the absence of an affidavit showing the materiality of his testimony, such a method of preparing for the trial would be tantamount to a fishing excursion for evidence to support a doubtful cause. The reasons assigned by defendant's counsel seem cogent, but would be more appropriately addressed to the legislative assembly, in whom the power of regulating the mode of procedure in such matters is lodged by the organic law of the state. If such a rule becomes oppressive, the best method of securing its repeal is by the enforcement of its provisions. As it now stands, each party to an action is afforded an opportunity to ascertain prior to the trial his adversary's view of the

matters in issue." Wheeler v. Burckhardt, 34 Or. 504, 56 Pac. 644; Pacey v. McKinney, 125 Fed. 675, 60 C. C. A. 365.

Thus the Supreme Court of Oregon, from which the Alaska statute was borrowed, and prior to its adoption for Alaska by Congress, and the Circuit Court of Appeals for this circuit, have expressly held that these statutory provisions are valid and not void for oppression or otherwise. This court must be controlled by these authoritative opinions. Robinson & Co. v. Belt, 187 U. S. 41, 23 Sup. Ct. 16, 47 L. Ed. 65.

In re Davis, 38 Kan. 408, 16 Pac. 790, and In re Cubberly, 39 Kan. 291, 18 Pac. 173, relied upon by defendant, the Supreme Court of Kansas held, under the statutes of that state, that the taking of a deposition merely to fish out in advance what the opponent's testimony would be, and to annoy and oppress him, and not for the purpose of using the same as evidence, is an abuse of judicial authority and process, and a party committed for contempt in such cases would be released on habeas corpus. The fact of abuse and oppression was admitted in the first case, and the court followed the precedent in the second. But in the later case of In re Merkle, 40 Kan. 27, 19 Pac. 401, the Supreme Court of Kansas found against the fact, refused to release the witness on habeas corpus and remanded him to custody for contempt. The court in that case said:

"There is a great distinction to be noticed in cases where the depositions of parties and those of witnesses are to be taken. Parties are but recently made competent witnesses. Their interest in the litigation is generally a safe assurance that they will be present at the trial, and the courts would be more particular in considering all such questions concerning them than they would be of a witness. Of course, when it is perfectly apparent that the rights of witnesses are being trifled with, and the process of the court abused, they are entitled to the full measure of protection. But as a rule a party has a right to take the deposition of witnesses, so as to provide against all contingencies, as a mere matter of precaution; but, be-

3 A.R.—27

fore a party shall be subjected to such process, there must be some reasonable ground upon which to predicate a belief that there is an actual necessity for it. There is no tenable ground upon which the witness can fairly claim to be discharged from custody. It is recommended that he be remanded to the custody of the sheriff of Sedgwick county. It is so ordered." In re Merkle, 40 Kan. 27, 19 Pac. 401.

The statute of Alaska makes no "great distinction" between parties and witnesses, for section 644, supra, provides for taking the testimony of a witness, generally, and also, "when the witness is a party to the action or proceeding, by the adverse party." I have no doubt of the power of this court, when called upon in proper cases, to prevent the abuse of its process; but the facts in this case do not disclose any such abuse. Under the statute and the rule in Pacey v. McKinney, supra, the plaintiff in Fleming v. Leber et al. had the right to call Leber as a witness, and also as an adversary party, in discovery of the evidence needed to properly prepare and present his case, and In re Merkle, supra, is authority in support of the rule.

Defendant also pleads his reliance upon Ex parte Lezinsky, 72 Cal. 510, 14 Pac. 104, and Burns v. Superior Court, 140 Cal. 1, 73 Pac. 597, both decided by the Supreme Court of California. In the first case that court held that a witness subpœnaed by a notary public, as an examiner, to give his deposition before the notary, in a suit pending in the superior court, could not be punished for contempt by the court, because the contempt was not one committed against the court. But in the latter case the Supreme Court overruled the Lezinsky Case, on the broad ground that a court of general equity jurisdiction necessarily has the power to punish for contempt one who thus disobeys the subpœna of the examining notary in an action, suit, or proceeding pending in court. The power of the superior court to punish the disobedience as a contempt was based on the ninth subdivision

of section 1209 of the California Code of Civil Procedure, which is identical with the ninth subdivision of section 609 of the Alaska Code of Civil Procedure. The court said of the exercise of this power:

"The object of the ninth clause of the section was to invest the court with power to prevent interference with any and all proceedings taken in any action by the court or its duly authorized agencies. acting in its behalf, and thereby to enable it the more efficiently to carry out its functions of doing justice in the trial and decision of causes pending before it. The word 'proceeding,' as used in subdivision 9, should therefore be given a meaning broad enough to embrace the purposes which it was designed to effect. The taking of a deposition is one of the most efficient and necessary proceedings known to the law in aid of the court and in furtherance of the ends for which the court was created. A construction which would deprive the court of the power to punish interference with its proceedings, which would take from the court its inherent power to compel the production of evidence necessary to the decision of causes, and substitute a system which would leave the ability to secure the evidence required for a just and proper decision to depend upon the voluntary submission of unwilling witnesses, summoned by an imbecile subpœna issued by a powerless ministerial officer, does not commend itself to our judgment. If such was the intention of the Legislature, the effect would be to divest the court of a part of its power so important to the accomplishment of its duties that the provision would have to be declared unconstitutional, and it would be necessary to revive the ancient practice in chancery of taking depositions by means of a master, or examiner appointed by the court."

The court also held that the notary public had no power to punish for contempt, saying:

"But, however this may be in other cases, we are not disposed to give the Constitution a construction which will allow ministerial officers to be invested with power to punish individuals by fine and imprisonment. Such power involves the personal liberty of the citizen, and is in its nature a judicial power of the highest degree. It cannot be exercised except after due process of law, and this implies that it must be vested in some court in all cases except those where the Constitution either expressly or by necessary implication

vests it elsewhere. It is clear that it could not be given to every officer authorized to administer oaths. * * * There are, however, special reasons why this power should not be vested in the officer taking the deposition. * * * And as the court in which the action is pending has the ultimate decision, and should have control of the proceedings for the production of evidence, it is the proper tribunal for the decision of all such questions. They can properly be presented and decided upon the hearing of a charge of contempt."

And, speaking of the fear of abuse and oppression, the Supreme Court says:

"An objection is sometimes made to the unlimited right to take depositions on the ground that it may be abused. If the enforcement of the right is left to the control of the court, and not to the examining officer, it will be able to prevent such abuse. * * * But the objections on the ground of abuses have but little weight as arguments. Citizens who seek the redress of wrongs or the protection of rights from the courts are entitled to use the power of the court for the production of the evidence to establish the facts on which their cases depend, and it is not just to refuse such aid to the many for the sake of preventing possible abuses by the few."

And the court concludes:

"We are of the opinion that proceedings in the taking of depositions in an action are proceedings of the court, within the meaning of that phrase as used in section 1209 of the Code of Civil Procedure, and that a refusal to obey a subpoena issued by the officer taking the deposition for the attendance of a witness at such taking is an unlawful interference with the proceedings, and as such punishable as a contempt of the court in which the action is pending, upon a proper charge made to the court by affidavit." Burns v. Superior Court, 140 Cal. 1, 14, 73 Pac. 597, 603.

The first subdivision of section 1986 of the California Code, corresponding to the first subdivision of section 625 of our Code, providing by whom the subpoena shall be issued differs from our Code in that it leaves out the controversial clause. The first subdivision of the California section reads as follows:

"The subpœna is issued as follows: (1) To require attendance be-fore a court, or at the trial of an issue therein. it is issued under the seal of the court before which the attendance is required, or in which the issue is pending."

The California clause, unlike the Oregon and Alaska sections, does not purport to give power to the clerk to issue a subpœna to require the attendance of the witness out of court in an action, suit, or proceeding pending therein. It is my judgment that the clerk of this court had authority to issue the writ of subpœna in question, that it was a contempt of this court for the witness Leber to disobey it, and equally so for the defendant Pratt to instruct him to do so.

Before proceeding to a final conclusion, however, I must notice the motion for a change of judge and the affidavit filed by defendant in support thereof, alleging bias and prejudice on the part of the trial judge, and challenging his qualification to sit as judge in this case. The defendant filed his motion for a change of venue or a change of judge in this action, for the reason that the

—"judge of this court, before whom the said action is now pending, is so biased and prejudiced against this defendant that he cannot have a fair and impartial trial herein, and the said judge is for that reason disqualified from hearing and determining the same. This motion is based upon the affidavit of the defendant herein attached, marked 'Exhibit A,' and made a part hereof."

As proof of bias and prejudice the defendant says in his affidavit that for two years he has taken an active and persistent part in preventing the judge's confirmation by the Senate, that the judge knows that fact, and that he believes the judge is prejudiced against him for that reason. He also complains of a judgment against him in a former contempt proceeding for coming into the judge's chambers and threatening him in the case out of which this proceeding grew. No specific act or speech of the judge is pointed out as evidence of

bias, except the actions of the judge in the regular perform-
ance of his judicial functions.

Sections 707 and 708 of the Code of Alaska point out those
disqualifications which prevent a judge from sitting in a case.
They are as follows:

"Sec. 707. Judicial Officer, Definition of. When Disqualified to
Act.—A judicial officer is a person authorized to act as a judge in a
court of justice. Such officer shall not act as such in a court of which
he is a member in any of the following cases: First. In an action or
proceeding to which he is a party, or in which he is directly inter-
ested. Second. When he was not present and sitting as a member
of the court at the hearing of a matter submitted for its decision.
Third. When he is related to either party by consanguinity or af-
finity within the third degree. Fourth. When he has been attorney
in the action or proceeding in question for either party. But this
section does not apply to an application to change the place of the
trial, or the regulation of the order of business in court. In the
cases specified in subdivisions 3 and 4, the disqualification may be
waived by the parties, and shall be deemed to be waived, unless an
application be made as provided in this Code.

"Sec. 708. When Judge Disqualified.—Whenever it appears that
the judge of the district court presiding in the division where the
action is pending is disqualified under the provisions of the section
last preceding the action shall be transferred to another division of
said court unless a judge of another division will appear and preside
during the disposition thereof: Provided, however, that the parties
may by written stipulation agree upon a member of the bar of said
court to try the same."

These sections contain the only conditions under which the
judge of this court should abandon the trial of a cause and
send it to another judge.

It is a mistake to assume that the judge of this court can
be ousted from jurisdiction to try a cause upon an allegation
of mere bias or prejudice. The case of Patterson v. Colorado,
205 U. S. 454, 27 Sup. Ct. 556, 51 L. Ed. 879, was a con-
tempt proceeding begun before the Supreme Court of Colo-
rado. The defendant was the editor of a prominent news-

paper in Colorado, and in a heated political contest he attacked the judges of the Supreme Court in his paper and cartooned them, accusing certain of them of specific acts of political offense in causes pending in that court. He was adjudged guilty of contempt by that court, and carried his case to the Supreme Court of the United States. The question of the right of the Colorado court to try the defendant for attacks made on its judges by the defendant was thus met by the Supreme Court of the United States:

"It is objected that the judges were sitting in their own case. But the grounds upon which contempts are punished are impersonal. United States v. Shipp, 203 U. S. 563, 574 [27 Sup. Ct. 165, 51 L. Ed. 319]. No doubt judges naturally would be slower to punish when the contempt carried with it a personally dishonoring charge; but a man cannot expect immunity from punishment by the proper tribunal, by adding to illegal conduct a personal attack."

In United States v. Shipp, 203 U. S. 563, 574, 27 Sup. Ct. 165, 51 L. Ed. 319, the defendant was brought to the bar for a direct contempt of the process of the Supreme Court of the United States, and the fact that the court was a party was suggested; but the court said:

"It has been suggested that the court is a party, and therefore leaves the fact to be decided by the defendant. But this is a mere afterthought, to explain something not understood. The court is not a party. There is nothing that affects the judges in their own persons. Their concern is only that the law should be obeyed and enforced, and their interest is no other than that they represent in every case."

In Alaska there are but three judges of the district court. One resides at Juneau; another, at Nome; the third, at Fairbanks. It is from 800 to 1,000 miles from one judicial residence to the other, and during portions of the year travel from one to the other is practically impossible. If an affidavit such as that in this case could be used to oust the jurisdiction of the trial judge, no offender or tardy litigant could

be brought to account for wrong. The process of the court could be treated with contempt, and every sort of indignity heaped upon the judges, litigants, and the public without redress. Such is not the law. The judge of this court is not obliged to maintain relations of intimacy and friendship with every offender or litigant, upon fear of loss of jurisdiction in causes pending in his court. So long as he maintains a dignified silence, and the record shows the facts sufficient to support jurisdiction, and he is not disqualified by statute, he must do his duty, even though it be disagreeable. The judge of this court is not disqualified by statute to try the issue in this case. If the record fails to show jurisdiction, the defendant has his remedy on appeal.

In the cases of In re Du Bose, 109 Fed. 971, 48 C. C. A. 1, and In re Noyes, Geary, Wood, and Frost, 121 Fed. 209, 57 C. C. A. 445, the Circuit Court of Appeals made a decided difference between the cases where the attorney merely gave advice as to the law, as did Geary, and those cases where they went beyond the right to advise in matters of law, and, actuated by a spirit of resistance, counseled or conspired with their clients and others to disobey an order of the court and obstruct its enforcement, as did Du Bose, Wood, and Frost. The defendant in this case admits that he advised his client, Leber, upon the law when asked for his opinion at the service of the subpœna, and the only question of fact for this court now to determine from all the evidence is: Did the defendant go beyond the right to advise in matters of law, and, actuated by a spirit of resistance, counsel or instruct his client to disobey the process of the court and obstruct its enforcement?

In his answer defendant admits that the recital of fact in the affidavit upon which the proceeding is based is substantially correct, with exceptions mentioned. He then answers upon the point in controversy:

"Defendant, further answering said affidavit, especially denies that in counseling Mr. Leber to disobey the said supposed subpœna he 'wrongfully, corruptly, and actuated by a spirit of resistance, counseled, advised, and instructed the said Leber to disobey the same,' as charged in the affidavit; but, on the contrary, this defendant says that he was asked for his opinion as a lawyer by Mr. Leber, as to whether the said supposed subpœna and notice were legal, and whether he was bound to respond thereto; that the questions involved in the inquiry were familiar ones with this defendant, and had been so as far back in his career as an attorney at law in the state of Kansas from 1877 to 1891; that he had no doubt then and has no doubt now that the said supposed subpœna is absolutely void, because not issued or authenticated by the notary public, because the clerk of this court had no authority whatever to issue it, because it was oppressive and an abuse of judicial process, because it required the said Leber to produce all of his private books, papers, documents, and everything else connected with the case in the office of the attorney of his opponent four days after the action was commenced, because it was in the nature of an unreasonable and unwarranted search into his private affairs, was evidently a mere fishing expedition upon the part of the plaintiff and his attorney, because it showed upon its face that neither said Fleming nor his attorney were acting in good faith to secure their legal rights, which lack of good faith was afterwards amply shown by their procuring his arrest, and clamoring and insisting that no bail be fixed, and that he be brought back from Valdez, a distance of 350 miles, when the thermometer was ranging from 30 to 40 degrees below zero, and resisting strenuously the efforts of this defendant to procure bail for him, and in not taking or attempting to take the deposition of said Leber since his return to Fairbanks on March 18, 1907. And this defendant now again asserts that his advice to Leber was correct, intelligent, and legal, and if put in the same position again he would give the same advice, believing and knowing that the same was good in law and in line with a proper administration of justice."

That answer shows the frame of mind in which defendant instructed Leber "not to go near" the notary public in answer to the subpœna. He did not advise Leber calmly and upon the law, but for all the reasons given in his answer counseled and instructed him to disobey the process of this

court, and he boastingly answers that he would do it again under the same circumstances, although he well knows this court has repeatedly held the process to be good and in conformity with the statute. Had he filed a motion in court to withdraw the subpœna for the reasons stated in his answer, they would have received respectful attention; but they fall far short of justifying his command to Leber not to go near the officer of this court and to disobey its process. They demonstrate that then and at all times since he had, and now has, and maintains, a determined, persistent, and criminal intention to obstruct the process of this court in that matter.

This contempt arose a year ago. In the February following the judge of this court was instructed by the Attorney General to go to Juneau and hold a term of court. Judge Gunnison came to Fairbanks in March, and remained here holding court until the middle of August. Though defendant then knew of the alleged bias and prejudice of the present judge, he refused to permit the original contempt case against Leber to be tried before Judge Gunnison, who assessed terms against his client for his refusal to appear for trial. When Judge Gunnison had returned to Juneau, and the present judge to Fairbanks, and the cause was set for trial, this defendant came into the chambers of the judge and threatened him if he should try the case, and for that threat the defendant was fined $300 for contempt, and assigns the same as proof of the prejudice alleged in this case.

Defendant instructed Leber not to go near the notary, to disobey the subpœna, and advised him to leave Fairbanks and go to Valdez, on his road to the States, after service of the subpœna. The original case of Fleming v. Leber et al. has been postponed and greatly prejudiced by such defiance of the process of this court, and that upon the advice, counsel, and instruction of the defendant. From all the evidence in this case the court now finds the charge of contempt against

the defendant to be true, and proven beyond reasonable doubt, in manner and form as alleged in the affidavit upon which this contempt proceeding is based. And the court finds from the evidence that the said Louis K. Pratt wrongfully, corruptly, and actuated by a spirit of resistance, counseled, advised, and instructed the said R. E. Leber to disobey the said subpœna and not to attend before the said officer, as required thereunder, or at all. The court further finds that such instruction, advice, and counsel were so given to Leber because the defendant then knew that Leber was ready and desirous of leaving the jurisdiction of this court, for the purpose of evading the taking of his deposition, and that such advice, counsel, and instruction were so given for fear that, if a motion were made to amend or withdraw the process, it would be so amended, and said Leber retained as a witness, and because the said Leber paid the defendant $250, and promised an equal amount at a later date; and the court finds that said acts constituted and are misbehavior in office and a violation of his duties as such attorney of this court, and an unlawful interference with the process and proceedings of this court.

The district attorney may prepare findings and judgment in accordance with this opinion. And it is the judgment of this court that the defendant be fined in the sum of $250, and that in default of payment thereof he be confined in the United States jail at Fairbanks, Alaska, until the same is paid at the rate fixed by law, to wit, $2 per day, or 125 days, and that he only pay accruing costs.