LEBER v. UNITED STATES ex rel. FLEMING.

PRATT v. SAME (three cases).

(Circuit Court of Appeals, Ninth Circuit. May 3, 1909.)

Nos. 1,555, 1,553, 1,556, 1,554.

**1.** WITNESSES (§ 10*)—SUBPŒNA—AUTHORITY TO ISSUE UNDER ALASKA CODE.

Alaska Code Civ. Proc. § 625, provides that subpœnas shall be issued "First: To require attendance before a court of record or at the trial of an issue therein, or out of such court in any action, suit or proceeding pending therein, by the clerk of such court. * * * Third: To require the attendance before the judge, justice of the peace or other person authorized by law to take the testimony or affidavit of another, by such judge, justice of the peace or other person in the places within their respective jurisdiction." Held, that a subpœna requiring a witness to appear before a notary public to give testimony in an action then pending in the District Court was properly issued by the clerk of such court, regardless of whether such a subpœna might also have been lawfully issued by the notary under paragraph 3 of the section.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 10.*]

**2.** WITNESSES (§ 21*) — PUNISHMENT OF DISOBEDIENCE TO SUBPŒNA AS CONTEMPT—DEFENSES.

A variance of an hour in the time when a witness is required to appear and testify between the original subpœna read to the witness and the copy delivered to him affords no defense to proceedings in contempt against him for failing to appear, where he did not appear at either time, basing his refusal on the claim that the subpœna was void on other grounds.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 21.*

Excuses for disobedience of subpœnas, see note to Fairfield v. United States. 76 C. C. A. 591.]

**3.** WITNESSES (§ 14*)—SERVICE OF SUBPŒNA—PAYMENT OF MILEAGE.

Where a witness was served with a subpœna to appear and give evidence before a notary public in the town where the service was made, and was paid mileage for one mile, which he received without objection, he was not excused from obeying such subpœna because of the fact that he resided at a greater distance than a mile from the notary's office.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 15; Dec. Dig. § 14.*]

**4.** WITNESSES (§ 16*)—SUBPŒNA DUCES TECUM—DUTY OF WITNESS TO APPEAR.

The fact that a subpœna requires a witness to produce books and papers which he cannot lawfully be required to produce does not affect the legality of the issuance of the subpœna nor the obligation of the witness to appear in obedience to it.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 25; Dec. Dig. § 16.*]

**5.** CONTEMPT (§ 10*)—ATTORNEY—ADVISING CLIENT TO DISOBEY ORDER OR WRIT.

An attorney has the right to advise a client as to the validity of an order of court or a writ issued under its authority, and if after investigation it is his honest belief that the order or writ is void his advice to that effect will not render him liable for an error of judgment, but he has no right to go beyond that and advise the client to disobey the same. and if he does so he is guilty of a contempt of the court which made the order or issued the writ; and the offense is especially flagrant where the court is open, and there is full opportunity for testing its legality in a lawful way, before obedience to it is required.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. § 21; Dec. Dig. § 10.*]

6. CONTEMPT (§ 61*)—REVIEW—REFUSAL OF JURY TRIAL—DISCRETION OF COURT.

Under Alaska Code Civ. Proc. § 611, which provides that in proceedings for contempt not committed in the presence of the court the trial shall be by the court, or, in its discretion, by a jury on application of the accused, the refusal of a jury trial was not an abuse of discretion for which the judgment can be reversed by an appellate court, where there was no substantial issue of fact but the judgment was justified by the admitted facts.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 189–191; Dec. Dig. § 61.*]

7. CONTEMPT (§ 10*)—ACTION OF ATTORNEY—UNPROFESSIONAL CONDUCT.

The action of an attorney in going to a judge in his room and stating that he wished to speak to him as a citizen, and then attempting to influence the judge's action with respect to the trial of a pending cause, was a gross violation of professional propriety, and warranted the punishment of the attorney for a contempt of the court.

[Ed. Note.—For other cases, see Contempt, Dec. Dig. § 10.*

Liability of attorneys, see note to Anderson v. Comptois, 48 C. C. A. 7.]

8. APPEAL AND ERROR (§ 19*) — DECISIONS REVIEWABLE — TEMPORARY ORDER WHICH HAS CEASED TO AFFECT SUBSTANTIAL RIGHTS.

An order of a court suspending an attorney from the right to practice therein for a stated time will not be reviewed by an appellate court in proceedings not instituted until after the term of suspension has expired.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 63–80; Dec. Dig. § 19.*]

In Error to the District Court of the United States for the Territory of Alaska, Third Division.

Proceedings in the above-entitled cases as against the plaintiffs in error for acts in contempt of court originating in the alleged unlawful and contemptuous disobedience of the mandate of a subpœna issued by the clerk of the District Court for the Territory of Alaska, Third Division, in case No. 622, pending in said court, wherein Robert H. Fleming was plaintiff and R. E. Leber et al. were defendants. To review the judgments in these cases, they have been brought here upon writs of error.

Campbell, Metson, Drew, Oatman & Mackenzie and S. D. Woods, for plaintiffs in error.

Robert T. Devlin, U. S. Atty., and William R. Harr, of Department of Justice (S. D. Woods, of counsel), for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. In a suit commenced in the court below on November 8, 1906, by Robert H. Fleming against R. E. Leber, administrator of the estate of Victor Baubet, deceased, and R. E. Leber, defendants, it was alleged in the complaint duly filed that, pursuant to certain agreements, conveyances, and leases, the plaintiff on April 14, 1906, became entitled to receive from the defendant R. E. Leber 10 per cent. of the gross output of gold from certain mining premises in Alaska until the sum of $2,500 due to the plaintiff should be fully paid; that the said Leber had collected from the laymen and lessees of the said mining company as royalty for the

privilege of working and mining such property large quantities of gold dust of great value, the exact amount of which was unknown to plaintiff; that he had been informed and believed, and accordingly alleged, that the defendant Leber had collected and received gold dust in sufficient quantities and of sufficient value to entitle the plaintiff to the full sum of $2,500 from the defendant; that said sum had not been paid, nor any part thereof, save and except the sum of $953.75, paid him from time to time by the said Leber; that upon information and belief the said Leber, for himself and as administrator of the estate of Victor Baubet, deceased, claimed some interest in and to said gold dust, or the money value thereof alleged to be due to the plaintiff.

The prayer of the complaint was that the defendants and each of them be required to render to the plaintiff an accounting of all their acts and deeds in the premises; to set forth the nature and character of any claim the defendants or either of them had to the 10 per cent. of the gross output of the gold or gold dust taken from said mining claim, and claimed by the plaintiff since the 14th day of April, 1906; that a decree be entered in favor of the plaintiff against the defendant in the sum of $1,546.25, with interest thereon from the time the same was collected by defendants, and costs of suit.

The name of Morton E. Stevens appeared upon the complaint as plaintiff's attorney. Summons was issued on this complaint on November 8, 1906, and on the same day service was made upon the defendant by the deputy United States marshal, together with copies of the complaint; on the same day a subpœna was issued by the clerk of the court requiring the defendant to appear before C. E. Wright, a notary public in and for the district of Alaska, at the office of Morton E. Stevens, in the Fairbanks Building in the town of Fairbanks, on November 12th, at the hour of 11 a. m. of that day, to testify as a witness upon behalf of plaintiff in the cause, and be examined under oath, and make then and there depositions as an adverse party in said case and at the instance of plaintiff. The subpœna also required the witness to bring with him, and have then and there for examination and inspection, all of the books, papers, accounts, and other documentary evidence of every nature whatsoever in his possession or under his control relating to the subject-matter in the action, and as required to do so by virtue of the provisions of chapters 61 and 63 of Carter's Alaska Code. This subpœna was served upon the defendant by the deputy United States marshal on November 8, 1906, at Fairbanks, by showing and reading to him the original and handing a copy thereof to the defendant, together with a copy of the original notice of taking depositions attached thereto, and also handing the defendant the sum of $4 for one day's attendance and the sum of 50 cents for mileage. With the subpœna was also served a notice to take the defendant's deposition at the same time and place mentioned in the subpœna. Thereafter and on the same day Leber took the said copies of summons, complaint, notice of taking depositions, and subpœna served upon him in said action to Louis K. Pratt, a practicing attorney, and asked him whether he, the said Leber, was required to appear before the notary public at the time and place

designated in the notice and subpœna and be examined by deposition in said action, and thereupon the said Pratt advised the said Leber not to respect the subpœna, and that "if Mrs. Wright (the notary public) had signed it it would be all right, but don't go near her." Thereupon Leber disobeyed the subpœna and did not attend before the notary public, and on the evening of November 12th he left Fairbanks for Valdez, a distance of about 350 miles. On November 24, 1906, Morton E. Stevens, attorney for plaintiff, filed a petition in the District Court of Alaska for a warrant to arrest the defendant R. E. Leber and bring him before the court to answer the charge of a contempt of court. The petition alleged that the defendant Leber on the 12th day of November, 1906, had willingly, maliciously, and contemptuously disobeyed the requirements of the subpœna issued by the clerk of the court commanding the defendant to be and appear before C. E. Wright, a notary public, as required by the terms of the subpœna. To this petition was attached the affidavit of the deputy United States marshal setting forth the service upon the defendant of the original summons, together with a copy of the complaint, and the service of a subpœna issued by the clerk of the court, and the notice to take depositions in said cause. There was also filed the affidavit of C. E. Wright, the notary public, setting forth that neither the defendant nor his attorney or any one for him appeared at the time and place mentioned in the subpœna and the notice to take depositions, or at any other time or at all. There was also filed the affidavit of Robert H. Fleming, the plaintiff in the case, setting forth the proceedings to take the testimony of the defendant Leber, and the failure of the latter to appear before the notary public and give his testimony as required in the subpœna and notice to take his deposition. A warrant was thereupon issued by the court for the arrest of the defendant, with directions to bring him before the court to show cause why he should not be punished for contempt of court for his unlawful and contemptuous disobedience of the mandates of the subpœna issued and served upon him by the warrant of arrest. This warrant was executed by the arrest of the defendant by the deputy United States marshal on November 26, 1907, at Valdez, Alaska, the defendant having left Fairbanks on the evening of November 12, 1906, and being at the time of his arrest on his way to Seattle in the state of Washington.

On November 26, 1906, Louis K. Pratt, appearing as attorney for R. E. Leber, moved the court to quash the petition for a warrant. This motion was denied on November 30, 1906. The attorney for Leber thereupon, on December 3, 1906, moved the court to fix Leber's bail, reciting in the moving paper that in the citation no bail had been fixed, and the defendant was then in custody some 400 miles distant from the court. The court fixed the bail at $2,000, which was given, and order entered that the defendant be discharged from custody. The defendant did not return to Fairbanks until March, 1907. In March, 1907, Judge Gunnison held court in Fairbanks in place of Judge Wickersham, who had been directed by the Attorney General to hold court at Juneau. Judge Gunnison continued to hold court

at that place until August, 1907. In April, 1907, and while Judge Gunnison was holding court at Fairbanks, on motion of the attorney for the relator Robert H. Fleming in the contempt proceedings against R. E. Leber, the court set the cause for hearing on April 17, 1907, at which time Louis K. Pratt appeared for Leber and announced that he was not ready for trial, and moved the court that the case be indefinitely postponed. The order was entered by the court upon terms. In October, 1907, after Judge Wickersham had returned and was holding court at Fairbanks, the attorney for the relator moved the court that the contempt proceedings and the original suit of Fleming v. Leber et al. (No. 622) be placed upon the next motion calendar, the attorney for the defendant being present and not objecting thereto. On October 15, 1907, the cause came on for hearing, and the attorney for the defendant moved the court for a jury trial, alleging that the judge of the court was biased and prejudiced against the defendant, and that a fair and impartial trial of the contempt proceedings could not be had before the judge. The demand was denied, and the cause set for trial on October 18, 1907. Before the court convened on October 15, 1907, Louis K. Pratt, the attorney for the defendant, entered the private chambers of Judge Wickersham, closed the door and said to the judge that he did not want him to try the case, and if he did so it would be disagreeable for the court. On October 19, 1907, the attorney for the defendant moved the court for a change of venue or change of judge, alleging in an affidavit filed by him that the Hon. James Wickersham, the judge of the court before whom the action was pending, was so biased and prejudiced against the defendant that he could not have a fair and impartial trial; that the said judge was for that reason disqualified from hearing and determining the same. This motion was also denied. The court thereupon heard the evidence in the contempt proceedings herein and adjudged the defendant guilty of contempt of court, finding that the right and remedy of the plaintiff in civil cause No. 622, wherein Robert H. Fleming was plaintiff and R. E. Leber et al. were defendants, had been prejudiced by the disobedience of the defendant of the subpoena issued therein. The court fined the defendant $250 and costs.

In the course of the hearing of this case, Louis K. Pratt, the attorney for the defendant, offered himself as a witness on behalf of the defendant, and testified that he had advised Leber with respect to the subpoena herein; that it was absolutely void, and that he, Leber, was under no obligations, legal or moral, to respect it; that if he, the witness, was in Leber's place, he would not do it; and he would not be imposed on in that way.

On October 23, 1907, Jeremiah Cousby, the attorney for the United States, brought this testimony to the attention of the court by affidavit. A warrant was thereupon issued for the arrest of Pratt upon the charge of contempt of court in advising and counseling the defendant Leber to disobey the subpoena. The defendant answered, substantially admitting the facts alleged in the affidavit of the United States attorney, but claiming that as a lawyer he was familiar with the question as to the validity of the subpoena; that it was void, and he had a right to so advise his client. The case was heard by the

court on November 11, 1907; the defendant was adjudged guilty of contempt of court, and sentenced to pay a fine of $250 to be paid forthwith in court, and in default of payment to be confined in jail until the same should be paid at the rate of $2 per day.

On October 22, 1907, the court entered an order reciting the facts hereinbefore stated, that on October 15, 1907, while case No. 637, entitled "United States ex rel. Robert H. Fleming, Plaintiff, v. R. E. Leber, Defendant," was pending, Louis K. Pratt, the attorney for the defendant in that case, entered the chambers of the judge and threateningly spoke and used the language:

"I don't want you to try that case (referring to the above-entitled case). I want a jury trial for Leber. If you do try it, it will be very disagreeable for you."

The order entered by the court directed that Louis K. Pratt show cause why he should not be punished for contempt of court committed in the face of the court. The respondent made return to the order to show cause, in which he made explanation and set up matters by way of purging himself of the charge of contempt of court. Among other things, he claimed to have said to the judge in his chambers:

"I want to talk to the judge as a citizen for a minute. In this case versus Leber there has been so much kicked up that is of a disagreeable nature that I don't want to try the case at this term; but if you think it must be tried, then I should like to have it tried by a jury."

The court thereupon determined that the defendant had been guilty of misconduct and misbehavior in office and had been guilty of contempt of court. The court thereupon ordered that the defendant be punished by a fine of $300, to be paid to the United States forthwith, otherwise to be recovered in the manner provided by the law for the recovery and collection of fines.

On November 11, 1907, Jeremiah Cousby, the attorney for the United States, filed in court an affidavit setting forth the proceedings in the court and the action by Louis K. Pratt in presenting motion for a change of venue or judge or for a jury trial in case No. 275, in which the said Louis K. Pratt alleged that he believed that in many instances James Wickersham, the judge of the court, in making rulings, decisions, and judgments in cases of which the affiant was interested as an attorney at law, had been blinded by passion and prejudice, and had been led into the doing of arbitrary, illegal, and unjust things by reason thereof; that in a number of instances affiant had been unable to account for the rulings and decisions of the said judge upon any other theory, and had been led to believe, and did believe, that the rulings and decisions in these instances were not the result of calm judgment, but were arbitrary, vindictive, and apparently actuated by malicious motives against the affiant. Thereupon the court ordered that a warrant issue for the arrest of the defendant, and that he be brought before the court to answer the charge. The defendant appeared and filed an affidavit alleging that the judge of the court was interested in the proceedings to such an extent and in such a manner that he was disqualified from sitting as a judge in the fur-

ther hearing and trial of the case. The purpose of this affidavit was to secure a continuance of a hearing in the case until the arrival of another judge to hold the court at Fairbanks. The court denied the motion for a continuance; overruled a demurrer to the charge contained in the affidavit, and the defendant's motion for a jury trial. The defendant entered a plea of not guilty, and upon the evidence the court adjudged the defendant guilty of contempt of court as charged, and sentenced him to pay a fine of $1, together with costs, and be imprisoned in jail for a period of one hour, and suspended him from practicing as an attorney at law in the courts of Alaska from the date of the judgment entered on the 18th day of November, 1907, until the 1st day of February, 1908.

These proceedings against the plaintiffs in error for contempt of court originated in case No. 622, wherein Robert H. Fleming was plaintiff and R. E. Leber et al. were defendants. The action was for an accounting in a mining enterprise in which plaintiff claimed to be entitled under an agreement to receive from the defendants 10 per cent. of the gross output of the claim, and for a decree for the amount found due. The summons issued under the complaint having been served upon the defendant, the plaintiff was authorized to take defendant's deposition under section 644, Alaska Code Civ. Proc. The plaintiff gave the notice of time and place for taking the deposition as required by section 652 of that Code. The plaintiff further proceeded under sections 624 and 625 of the Code and had a subpœna issued by the clerk of the court requiring the attendance of the defendant at the time and place designated in the subpœna to testify as a witness in the action. The defendant did not attend at the time and place mentioned, and he justifies his conduct by assailing the validity of the subpœna.

Section 624 of the Alaska Code of Civil Procedure defines a subpœna as follows:

"The process by which the attendance of a witness is required is a subpœna. It is a writ directed to a person and requiring his attendance, at a particular time and place, to testify as a witness in a particular action, suit, or proceeding therein specified, on behalf of a particular party therein mentioned. It may also require him to bring with him any books, documents, or other things under his control which he is bound by law to produce in evidence."

Section 625 of that Code, providing how and by whom such subpœna shall be issued, reads as follows:

"First. To require attendance before a court of record or at the trial of an issue therein, or out of such court in any action, suit or proceeding pending therein, by the clerk of such court;

"Second. To require attendance before a commissioner appointed to take testimony by a court of the United States, or any state or territory, or any foreign country, by any clerk of a court of record, in places within the jurisdiction of such court;

"Third. To require the attendance before the judge, justice of the peace, or other person, authorized by law to take the testimony or affidavit of another, by such judge, justice of the peace, or other person, in the places within their respective jurisdiction."

It is contended on the part of the defendant that the clerk of the court was without jurisdiction to issue the subpœna to take the testi-

mony of the defendant before the notary public, and, being without
jurisdiction, the subpœna was void and the defendant might disre-
gard its mandate with impunity. In our opinion, this is not the cor-
rect construction of this statute. The language of the statute is plain,
and points out specifically how and by whom subpœnas shall be issued.
The clerk of a court of record shall issue all subpœnas described in
the first and second paragraphs of the section, and the judge, justice
of the peace, or other person all subpœnas described in the third para-
graph. Under which do we find the subpœna described in this case?
It was a subpœna to take the deposition of a witness out of court in
an action pending therein. This subpœna is clearly described in the
first paragraph of the section, and was required to be issued by the
clerk of the court. It may be that the notary public was also author-
ized to issue the subpœna under the provisions of the third paragraph
of the section, but that fact does not deprive the clerk of the court
of his jurisdiction to issue the subpœna provided in the first paragraph.

It is objected further that the original subpœna required the de-
fendant to appear before the notary public at 11 o'clock a. m. on No-
vember 12, 1906, while the copy left with the defendant by the deputy
marshal required him to appear at 10 o'clock a. m. of that day. The
return of the deputy marshal shows that he read the original subpœna
to the defendant; he was therefore fully informed that he was to
appear before the notary public at 11 o'clock a. m., and not 10 o'clock
a. m. But it appears from the evidence that he did not appear before
the notary public at any time during that day, and he does not claim
that he did; his refusal to appear was not because of the difference
in time stated in the original and the copy, but because of the alleged
invalidity of the subpœna.

It is further objected that the defendant lived at least 27 miles from
the office of the notary public at Fairbanks, and that the mileage of
50 cents paid to him was not the mileage to which he was entitled un-
der the law. The defendant was served with the subpœna in Fair-
banks. He received the amount paid to him without objection, and
his refusal to appear was not based upon that objection. It is fur-
ther objected that the subpœna contained directions (duces tecum) re-
quiring him to produce books, papers, and accounts that were too
broad and general and in violation of the defendant's rights. The
defendant was not adjudged guilty of contempt of court in failing
to produce books and papers, but solely because he refused to ap-
pear before the notary and give his deposition. This objection has
therefore no bearing upon the question before the court. Fairfield
et al. v. United States, 146 Fed. 508, 76 C. C. A. 590. It did not af-
fect the jurisdiction of the clerk of the court to issue the subpœna.
Hale v. Henkel, 201 U. S. 77 (concurring opinion of Mr. Justice Har-
lan, page 78), 26 Sup. Ct. 370, 50 L. Ed. 652.

The subpœna having been issued by an officer authorized by law and
properly served, it was the duty of the defendant Leber to appear
before the notary public at the time and place named and be exam-
ined as therein required, and, as the validity of the subpœna is the
only subject of controversy in this case, the judgment of the court be-
low is affirmed.

The next case in order of time was the proceedings against Louis K. Pratt upon the charge of contempt of court in advising and counseling the defendant Leber to disobey the subpœna. The defendant raises the same objections as to the subpœna that were raised in the case of Leber. These objections, having been disposed of in that case, need not be further considered. The defendant further justifies his conduct on the ground that he acted in good faith as an attorney in advising Leber that he was under no legal obligations to attend before the notary public notwithstanding the fact that he had been served with a subpœna so to do.

In the case of In re Dubose, 109 Fed. 971, 974, 48 C. C. A. 1, 4, this court said:

"There can be no question as to the right of an attorney to advise his client as to the validity of an order of court or of a writ issued under its authority, where such an order or writ affects the client's interests; and if, after investigation, it is the attorney's honest belief that such order or writ is illegal and void, his advice to that effect will not render him liable for an error of judgment. But an attorney cannot go beyond the right to advise, and, actuated by a spirit of resistance, conspire with his client or with others to disobey an order of court, obstruct the due administration of the laws, and bring the authority of a court of justice into contempt."

The case of In re Noyes, 121 Fed. 209, 57 C. C. A. 445, included a writ of error in the case of In re Geary, 121 Fed. 225, 57 C. C. A. 445. In the latter case Thomas J. Geary was charged with contempt of court upon a statement as shown by the reporter's notes made by himself in the course of his examination in the case of Alexander McKenzie charged with contempt of court. The statement of Mr. Geary was to the effect that he had advised McKenzie to disobey a writ of this court. There was no further evidence against him, and upon the hearing in the contempt proceedings in his own case he testified that he gave McKenzie no advice whatever as to the course of action he ought to pursue in the matter. His attention was directed to the specific testimony which he was reported as having given in the McKenzie Case. He testified that he either did not catch the scope of the interrogatory, or the testimony had been incorrectly taken down by the reporter, and that he did not intend to testify as reported. He referred to other testimony in the case which corroborated his testimony that he gave no such advice. The court found the explanation satisfactory, and the charge was therefore dismissed for the reason that he did not advise or encourage disobedience of the order of the court.

That the present case does not come under the rule of the latter, but under the rule of the former, is clearly established by the testimony. R. E. Leber testified as follows:

"Mr. Pratt stated, as I said before, after he looked over the papers, he said: 'Steve can't do that. It ain't made out right. Don't you go near them.' He said, 'If the notary had signed that in place of the judge' or 'the clerk, you should obey it, but this way you don't need to go near her (the notary public). They are trying to hold you up.' * * * Q. What did you do when he told you not to go near her? A. I didn't go near her. Q. Was that the reason why you didn't go near her? A. Yes, sir."

Mr. Pratt testified in his own behalf as follows:

"Q. It was upon a thorough examination of the authorities, such as you could find, that you came to the conclusion that the process that was shown to you was void? A. Certainly. I knew it was void, and I know it now. Q. And you are still of the same opinion? A. Why, certainly. When a man comes to me and asks me if such a paper is void or valid, I will tell him it is void, certainly. Q. If he further asked you what to do under the circumstances, what would you tell him? A. I would tell him if he was gillie enough to be jerked around that way and bulldozed and mistreated that way, he can go to the notary public if he wants to, but if he has any manhood about him he will just stay away. That is what I would tell him. * * * Q. Had he asked you at that time whether he should go over there? A. I don't know whether he did or not. Q. You just told him that without him asking you anything about it? A. A lawyer who tells a client a process is void, and he need pay no attention to it—it is folly to draw a distinction between that and his telling him that the process is void and you need pay no attention to it. It is folly to draw a distinction between that and where he goes further and says, 'Just stay away from there.' There is nothing to that. Whenever a lawyer gives that advice and a client follows it, he has got to take his chances, of course. I took my chances, and am taking them now."

He knew that in advising his client to disobey the subpœna he did so at his peril, and he accepted the peril. The subpœna had been issued by the clerk of the court; the court was in session at Fairbanks. The regular procedure to determine the validity of the subpœna was a motion to quash. This motion could have been heard by the court at any time and determined before the day designated for the taking of Leber's testimony, and this procedure was peculiarly appropriate to the situation in this case; or the defendant might have advised his client to attend before the notary public and there make the objection to the validity of the subpœna. An appearance for that purpose only would not have been a waiver of jurisdiction. But instead of testing the validity of the subpœna in court in some regular way, the defendant advised his client to disobey its mandates, thereby exhibiting a spirit of contemptuous resistance to the order and process of the court, in which his client participated by leaving Fairbanks on the evening of November 12, 1906, and proceeding to Valdez, a distance of 350 miles on his way to Seattle.

It is assigned as error that the court excluded the testimony of certain attorneys who, it is said, would have testified that in their opinion the subpœna was void. It is said that the testimony was offered to show good faith, but, as already stated, good faith required that this question should have been submitted to the court for its determination. The opinion of attorneys as to the validity of the subpœna could not excuse defendant's conduct in this respect.

It is also assigned as error that the court improperly refused the defendant a jury trial. Section 611, Alaska Code Civ. Proc. (31 Stat. 430), provides as follows:

"When a contempt is committed in the immediate view and presence of the court and officer, it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate view and presence, determining that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed. In other cases of contempt the trial shall proceed upon testimony produced as in criminal cases, and the accused shall be entitled to be confronted with the witnesses against him, but

such trial shall be by the court or, in the discretion of the court, upon application of the accused, a trial by jury may be had as in any criminal case."

It is admitted that the only question under this statute is whether the court abused its discretion in refusing the defendant a jury trial. The general rule is that decisions which rest in the discretion of the court below cannot be examined in the appellate court except in cases of gross abuse of discretion, and generally, where the action of the inferior court is discretionary, its decision is final. 1 Encyclopedia of U. S. Supreme Court Reports, 983.

In this case there was no abuse of discretion, for there was no substantial issue of fact for a jury to determine. The admitted facts were sufficient to justify the judgment of the court. The judgment in this case must therefore be affirmed.

The next case is that of Louis K. Pratt, charged with contempt of court. When case No. 637, United States ex rel. Robert H. Fleming, Plaintiff, v. R. E. Leber, Defendant, was about to be set for trial, it is charged that the defendant entered the private chambers of Judge Wickersham and used the following threatening language to the judge:

"I don't want you to try that case. I want a jury trial for Leber. If you do try it, it will be very disagreeable for you."

It is assigned as error in this case that the court refused to accept the return, answer, and explanation on file in court tendered by the defendant for the purpose of purging himself of the charge of contempt of court. The defendant in his return claims to have gone to the private office of the judge of the court and there stated to the judge privately:

"I want to talk to the judge as a citizen for a minute. In this case versus Leber there has been so much kicked up that is of a disagreeable nature that I don't want to try the case at this term, but if you think it must be tried, then I would like to have it tried by a jury."

To which the judge of the court responded:

"If anything disagreeable has been kicked up in that case, the attorneys did it; I didn't. I don't propose to shirk my duty simply because a thing is disagreeable."

Accepting the version of the defendant as to what was said on this occasion, his conduct can only be viewed as grossly improper. A case in which he was attorney for the defendant was about to be set for trial. He had succeeded in preventing the case being tried by Judge Gunnison, who had been holding the court at Fairbanks from March to August. He was about to make an effort to prevent its trial by Judge Wickersham. If he had any legal grounds for a continuance or for a trial otherwise than by Judge Wickersham, the proper place to make the showing was in the courtroom, where the attorneys on the other side would have an opportunity to hear what was said and meet the issues if any were presented; or if for any reason the application should not have been made in a public courtroom, then the application should have been made to hear the motion in chambers and opposing counsel notified of such application. It was not

proper for the defendant to present the matter to the judge ex parte and in the privacy of his chambers.

The statement of the defendant that he approached the judge privately in chambers because he wanted to "speak to the judge as a citizen" is an admission of improper conduct. The judge had no duty in the case as a citizen that he did not have as a judge, and the defendant knew, or should have known as an attorney, that he had no right to seek to influence the judge in his action by private ex parte threats or statements. That such conduct was in gross violation of professional propriety is so manifest that it does not seem necessary to more than refer to the well-known rule upon the subject, concisely expressed in the Code of Ethics adopted by the American Bar Association at its last session. In a section condemning improper attempts to exert personal influence upon a court it is provided, among other things, in section 3 as follows:

"A lawyer should not communicate or argue privately with the judge as to the merits of a pending cause, and he deserves rebuke and denunciation for any device or attempt to gain from a judge special personal consideration or favor."

It is objected that the court below, under an order to show cause upon the hearing of the contempt, refused to hear the defendant and dealt with him summarily, as courts are only entitled to do with contemnors in case of direct contempt. It is not necessary to discuss this question. In our opinion the admission contained in the return of the defendant to the order to show cause was sufficient to justify the judgment. The judgment of the court in this case must therefore be affirmed.

The next and last case is the charge of contempt against Louis K. Pratt in alleging and charging in an affidavit filed in support of a motion for a change of venue or change of judge in case No. 275, entitled "United States of America v. Louis K. Pratt," that Judge Wickersham—

"in making rulings, decisions, and judgments in cases in which he was interested as an attorney at law, had been blinded by passion and prejudice, and has been led into the doing of arbitrary, illegal, and unjust things by reason thereof. That in a number of instances this affiant has been unable to account for the rulings and decisions of the said judge upon any other theory, and has been led to believe, and does believe, that the rulings and decisions in these instances were not the result of calm judgment, but were arbitrary, vindictive, and apparently actuated by malicious motives as against this affiant."

The defendant offered no evidence in this case, and the court found the charge as true, and thereupon sentenced the defendant to pay a fine of $1 and be imprisoned for the period of one hour. It was also ordered that the defendant be suspended from practicing as an attorney in the courts of Alaska from the 18th day of November, 1907, to the 1st day of February, 1908. There is no bill of exceptions in this case. The error relied on for the reversal of the judgment is that the court erred in suspending defendant from practicing as an attorney at law in the courts of Alaska. The sentence of the court expired on February 1, 1908. The transcript of the record was not

filed in this court until June 9, 1908. The order of suspension from practice was no part of the judgment in the contempt proceedings, and, as the suspension expired more than four months before the transcript of record was filed in this court, the order no longer presents a question for review.

The judgment of the court is af