In re WRIGHT.

(Circuit Court, S. D. New York. March 25, 1903.)

**1. EXTRADITION—CONSTRUCTION OF TREATY WITH GREAT BRITAIN—LAWS OF COUNTRY.**

The treaty of 1889 (26 Stat. 29) between Great Britain and the United States, which provides for extradition for certain acts of fraud, "made criminal by the laws of both countries," does not by such phrase limit the right of England to extradition by this country to persons charged with acts which are made criminal by the laws of the United States, but must be construed in the light of the well-understood fact that under our system of government the power of the federal government to legislate with respect to crimes is limited, while the power of the states to legislate with respect to other offenses is recognized; and when, by the law of England and by the law of the state in which a fugitive from English justice is found, the fraudulent acts with which he is charged are made criminal, he is fairly within the treaty.

**2. SAME—POWER OF CIRCUIT COURTS—ADMISSION TO BAIL.**

In the absence of legislation conferring it, Circuit Courts of the United States are without power to admit to bail persons arrested for extradition under a treaty with a foreign government.

Habeas Corpus to Test Sufficiency of Complaint, and to Enlarge on Bail.

Louis Marshall, for the writ.

Charles Fox, opposed.

LACOMBE, Circuit Judge. It may reasonably be assumed that, when the phrase "made criminal by the laws of both countries" was inserted in the treaty of 1889 (26 Stat. 29), it was perfectly well understood that under our system of government there are certain spheres within which the federal government exercises domain, and other spheres in which it cannot intrude; the individual states alone being competent therein. Within its own sphere the federal government may make certain acts criminal; without that sphere, it is powerless to make equally heinous acts criminal, but it recognizes the power of the state to do so. It seems too narrow a construction of the act to hold that, in adding the above-quoted clause to the enumeration, "fraud by a bailee, banker, agent, factor, trustee, or director or member or officer of any company," the United States was assenting to the proposition that the enumeration must be restricted to the sphere within which the federal government was competent to regulate the subject by general laws. If certain fraudulent acts—by a trustee of real estate, for instance—were made criminal, in identical language, by the laws of every state in the Union the treaty, if thus interpreted, would not apply, so long as there was no federal statute which covered the case, although Congress, under the Constitution, might not be competent to enact such a statute. When, by the law of England, and by the law of the state in which the fugitive is found, the fraudulent acts which it is charged he has committed are made criminal, he is fairly within the treaty. A statute of the state is, broadly speaking,

¶ 2. See Extradition, vol. 23, Cent. Dig. § 14.

"a law of this country," as contradistinguished from a "law of Great Britain."

The complaint, in somewhat inartificial language, charges that the petitioner, being then a director of a specified finance corporation, did make, circulate, and publish certain reports and statements of accounts of the said corporation, which were false, and which he knew to be false, with the intent thereby to deceive and defraud. This charge is within the sections cited (83 and 84) from chapter 96, St. 24 & 25 Vict., and also within section 611 of the Penal Code of New York (subdivision 3). The application to discharge from custody is therefore denied, without prejudice to its renewal when the evidential papers arrive, and the precise acts complained of are more specifically set forth.

The application to admit to bail is denied, briefly, for the following reasons:

1. The only case found in our Reports which deals with the subject of bail in international extradition proceedings is adverse to petitioner. In re Carrier (D. C.) 57 Fed. 578.

2. Applications to admit to bail in such cases have on several occasions (although not recently) been made to the Circuit Court in this district, and have been uniformly denied, although no opinions appear to have been written.

3. It is not difficult to conceive of some sufficient reason why the United States, having assumed certain treaty obligations, should provide a scheme for carrying them out which should not provide for enlargement on bail; and we find that, whereas the statutes regulating the arrest of persons in one federal district who may be charged with crime in another district provide for taking bail, the statute regulating international extradition makes no such provision.

4. The opinion of Lord Russell in Queen v. Spillsbury, 2 Q. B. D. (1898) 615, upon which petitioner principally relies, and which holds that "the Court of Queen's Bench has, independently of statute, by the common law, jurisdiction to admit to bail," is not persuasive. The opinion concludes with the statement: "This inherent power to admit to bail is historical, and has long been exercised by this court, and, if the Legislature had meant to curtail or circumscribe this well-known power, their intention would have been carried out by express enactment." The Circuit Courts of the United States, however, have no such historical heritage. "These courts are creatures of statute, and they have only so much of the judicial power of the United States as the acts of Congress have conferred upon them." Bath County v. Amy, 13 Wall. 244, 20 L. Ed. 539.

The writ is dismissed.