# UNITED STATES CIRCUIT COURT OF APPEALS.

## May, 1918.

## FRANK D. SAFFORD v. THE UNITED STATES.

PERJURY—AUTHORITY OF UNITED STATES COMMISSIONER.

A United States commissioner has authority to conduct judicial hearings for the purpose of inquiring whether a crime has been committed, and, if so, whether there is reasonable ground for connecting the prisoner with it. This authority is involved in the manifest injustice of imprisoning citizens without giving them a hearing, and is inferentially, if not expressly, conferred by section 1678, U. S. Comp. Stat.

SAME—U. S. REV. STAT. § 1014.

Under section 1014, U. S. Rev. Stat., which empowers a United States Commissioner to imprison or bail an offender " agreeably to the usual mode of process against offenders in such state," a United States commissioner performing his duties in the State of New York is authorized to conduct such examinations as are provided for in the Code of Criminal Procedure of the State of New York.

SAME—LETTERS AS EVIDENCE.

Letters may be admissible for the purpose of showing similarity of characteristics, habits, expressions and chirography of the writer with those of a person whose identity is in issue, although the contents of the letters may be inadmissible for the purpose of proving the facts stated therein.

TRIAL—CHARGE.

The trial justice in entitled in his charge to contrast the Government's theory and the defendant's theory of the facts. Where the jury is fully and clearly informed as to the presumption of the defendant's innocence, the necessity of proving his guilt beyond a reasonable doubt, and that the jurors are the absolute judges of the facts, the rights of the defendant are not infringed if the charge by contrasting the respective theories is in the nature of things persuasive of the greater probability of the Government's case.

SAME—REFUSAL TO RECALL WITNESS.

Where the defendant's counsel, in ignorance of the fact that a paper marked for identification was thereafter marked in evidence, failed to examine a witness in reference thereto, and upon discovery requested the court, at the conclusion of the summing up for the Government, to permit the witness to be recalled for examination in respect of said exhibit,

the refusal of the trial justice to grant the application at that stage of the case does not constitute error unless such refusal amounts to an abuse of discretion.

SAME—WITNESS—OBJECTION TO AS PREVIOUSLY CONVICTED OF CRIME.

An objection to the competency of a witness because of a previous conviction of crime, held no good.

SAME—REFUSAL TO CHARGE.

The refusal of a trial judge to charge as requested is not an error if the matter covered by the requst has been fairly covered in the main charge.    •

SAME—JUDGE MAY PREVENT UNNECESSARY AND PROLIX EXAMINATION.

A trial judge is entitled to prevent unnecessary and prolix examination, and to exclude questions which, though proper, have been previously answered.

*Slade & Slade (B. Slade, of counsel), for plaintiff in error.*

*Francis G. Caffey, United States Attorney (H. Harper, United States Attorney; Samuel Hershenstein, Special Assistant United States Attorney, of counsel), for defendant in error.*

WARD, Circuit Judge:

This is one of a series of litigations arising out of a charge made by Rae Tanzer that she had been seduced under a promise of marriage by James W. Osborne.

March 16, 1915, she began a civil suit against him for breach of promise of marriage for damages in the sum of $50,000.

March 19 James W. Osborne caused a warrant to be issued against Rae Tanzer charging her, under section 215, United States Criminal Code, with using the United States mails to execute a scheme to defraud.

Two sisters of Rae Tanzer testified at the hearing before the commissioner that James W. Osborne called at their home October 17, 1914, and the defendant testified that he was clerk of the Kensington Hotel, Plainfield, N. J., and he identified James W. Osborne and Rae Tanzer as registering as Oliver Osborne and Mrs. Oliver Osborne and taking a room for the

afternoon, October 18, 1914. The commissioner held Rae Tanzer for the grand jury.

Subsequently the sisters and the defendant Safford were indicted for perjury under section 125 of the United States Criminal Code, and Maxwell and David Slade, Rae Tanzer's attorneys, with one McCullough, a detective, were indicted for the crime of conspiracy.

The defendant Safford was convicted of perjury, the judgment being reversed in this court (233 Fed. Rep. 495), and this is a writ of error to a judgment of conviction upon the new trial which occupied fifteen court days and developed a good deal of heat between counsel, Honorable LEARNED HAND, District Judge, presiding.

It was conceded in all these proceedings that a man calling himself Oliver Osborne had entered into illicit relations with Rae Tanzer and had brought her to the Hotel Kensington October 18, 1914, but the vital question was whether this man was James W. Osborne, as Rae Tanzer alleged, or was one Charles H. Wax, as James W. Osborne alleged. There was, of course, the additional question whether, if Wax was the man, the defendant had falsely and knowingly identified James W. Osborne before the United States Commissioner or had made an honest mistake.

The record consists of 2,719 typewritten pages and there are 515 assignments of error. It will be readily understood that the court can do no more than dispose of most of them generally.

At the outset and throughout the case the defendant's attorneys objected that the United States Commissioner had no authority to conduct a hearing or administer an oath to the defendant or to do more than issue a warrant of arrest and either imprison or admit him to bail. If this is so, the defendant would not be guilty of perjury under the statute, even if he had knowingly testified falsely, because the crime can only be committed if the officer has authority under the laws of the

United States to administer the oath (section 125, U. S. Criminal Code).

Ever since circuit commissioners (now called United States Commissioners, § 19, chap. 252, Laws of 1896; Stat. L. 29, 84) were appointed (5 Stat. L. 517, 1842; 14 Stat. L. 543, 1867), it has been the practice for them to conduct judicial hearings for the purpose of inquiring whether any crime has been committed, and if so, whether there is reasonable ground for connecting the prisoner with it, and thereupon either discharging him, imprisoning him or admitting him to bail. It would be a scandal to arrest and imprison citizens without giving them a hearing, and we would not interfere with this uniform and wholesome practice except under absolute necessity.

Section 1014, United States Revised Statutes, provides: " For any crime or offense against the United States the offender may, by any justice or judge of the United States, or by any commissioner of a Circuit Court to take bail, or by any chancellor, judge of a Supreme or Superior Court, chief or first judge of Common Pleas, mayor of a city, justice of the peace, or other magistrate, of any State where he may be found, and agreeably to the usual mode of process against offenders in such State, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizances of the witnesses for their appearance to testify in the case. And where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

The defendant contends that the language, " agreeably to the

usual mode of process against offenders in such States," means only " the process itself such as warrants, commitments, &c., as distinguished from procedure which may embrace hearings." We think it means procedure, and the Code of Criminal Procedure of the State of New York (sections 188-189) provides for just such examinations (U. S. v. Dunbar, 83 Fed. Rep. 151; Cohen v. U. S., 214 Fed. Rep. 23; U. S. v. Greene, 100 Fed. Rep. 941).

Section 981 (U. S. Rev. Stat.), incorporating the law enacted August 16, 1856, recognized such hearings by restricting the number of witnesses to four whose fees shall be taxed against the United States " in the examination of any criminal case before a commissioner of the Circuit Court."

Section 1 of the Act of August 18, 1894, plainly calls for a preliminary hearing before the commissioner. It is as follows: " It shall be the duty of the marshal, his deputy, or other officer, who may arrest a person charged with any crime or offense, to take the defendant before the nearest Circuit Court commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail for trial, and the officer or magistrate issuing the warrant shall attach thereto a certified copy of the complaint, and upon the arrest of the accused, the return of the warrant, with a copy of the complaint attached, shall confer jurisdiction upon such officer as fully as if the complaint had originally been made before him, and no mileage shall be allowed any officer violating the provisions hereof " (U. S. Comp. Stat., § 1678).

The principal fact to be established in the case was one of identity. The district judge, over the objection of the defendant that it was hearsay, admitted evidence that Wax had assumed the name of Oliver Osborne, had been known to, corresponded with and asked for under that name by several persons, was in the habit of picking acquaintance with shop girls, sending notes to them and inviting them to dinner and to the theatre.

Further, it is said that under our former decision in this case (233 Fed. Rep. 497) the letters written to Rae Tanzer either by Wax or by James W. Osborne and the letters concededly written by Wax under the name of Maize Mason Nye to Ethel Brooks should have been excluded as hearsay. The conversation with and letter written by Wax which we held should have been excluded as hearsay on the former trial were flat statements by Wax that he was the Oliver Osborne who had made love to Rae Tanzer. That was establishing by hearsay the precise point in issue. But the letters to Rae Tanzer were admitted in this case only to show the similarity of character, habits, expressions and chirography of the writer with those of Wax as proved by witnesses and by letters concededly written by him. The contents of the letters objected to were mere love trash and quite immaterial. Upon this subject see Hardy v. Harbin (154 U. S. 598), Wigmore on Evidence (410-416).

Next, there are a number of exceptions to the charge, the principal complaint being that it was so one-sided as to constitute a summing up for the Government, omitting to remind the jury of the defense. We cannot accept this view. The jury were informed fully and clearly as to the presumption of the defendant's innocence, the necessity of proving his guilt beyond a reasonable doubt, and that they were the absolute judges of the facts. When the court came to contrast the Government's theory and the defendant's theory with the evidence what he said seemed very persuasive in favor of the Government, but this, we think, was in the nature of things. The defense was that James W. Osborne had employed Wax to impersonate him and assume his guilt, and had suborned him and other witnesses for the Government. This was plainly set forth to the jury. No doubt in hearing the charge the jury perceived, as we do in reading it, that the Government's case was far the more probable. It would be difficult to discuss the testimony at all without this result.

The defendant vigorously insists that it was error after the Government had concluded its summing up to deny his application either to explain exhibit 8 or offer further evidence in respect to it. The contention is that this exhibit was only marked for identification, and that the attorney for the United States, without having offered it in evidence or previously mentioning it, made great capital out of it in summing up. The trial judge has certified in the bill of exceptions that the exhibit, although originally marked for identification, was subsequently offered in evidence. It was within his discretion either to grant or to deny the defendant's application at that late stage of the case, and we cannot say that he abused his discretion in denying it.

The objection as to the competency of Wax as a witness because of previous convictions is not good. (Rose v. United States, 245 U. S. 467.)

Such of defendant's requests as were proper which the court refused it covered in the charge. It is within the province of the trial judge to exclude questions which have been previously answered and to prevent unnecessary and prolix examination. We discover no harmful error in the other assignments.

The judgment is affirmed.

## NOTE ON AUTHORITY OF UNITED STATES COMMISSIONER.

The powers exercised by a commissioner in the examination of a person charged with an offense are those common to all examining magistrates. (Ex parte Jones, 96 Fed. 200.)

His only power is to determine whether there is probable cause to believe that an offense has been committed. (United States v. Hughes, 70 Fed. 972.)

If it develops during the hearing that defendant has committed an offense other than the one charged, he may be held for the additional offense without issuing a warrant of arrest therefor.   (5 Comp. 320, Inst. 986.)

The United States attorney cannot control the actions of the commissioner to prevent a preliminary consideration of the case.   (United States v. Center, 1 Porto Rico Fed. 407.)

To authorize him to commit, he need not be convinced of the guilt of the defendant, but the proof should be such as to afford good reason to believe that the offense was committed, and by the accused; otherwise it is his duty to discharge.   (Ex parte Jones, 96 Fed. 200.)

. The examination of witnesses is not a necessary condition to a preliminary examination before a commissioner, and where a defendant waives an examination and is held for trial the " hearing and deciding " is complete.   (Goodrich v. U. S., 42 Fed. 392, 7 Comp. 587.)

The preliminary examination of witnesses by a commissioner in order to determine whether a warrant should issue is not a " hearing " and has no place in the commissioner's record of the case.   (United States v. Patterson, 150 U. S. 65.)

A paper certified under his hand and seal, as being a true copy of the original record in a proceeding within his jurisdiction, is admissible in evidence without oath.   (Frost v. Holland, 75 Me. 108.)

All the regulations and steps incident to the proceedings before a United States commissioner, from its commencement to its close, are guided by the State laws, so far as they may be applicable to the Federal Courts, if no rule upon the same subject has been prescribed by the Federal Statutes. (United States v. Sauer, 73 Fed. 671.)

WARRANT.

The commissioner must issue a warrant and attach thereto a certified copy of the complaint, and the return of the warrant, with a copy of the complaint attached confers jurisdiction upon him as fully as if the complaint had originally been made before him.   Without such certified copy of complaint attached to a warrant issued by a commissioner, a commissioner or magistrate nearer the place of arrest would be without jurisdiction to hear the case.   (Puleston v. United States, 88 Fed. 970; McGowan v. United States, 102 Fed. 553.)

No search warrant shall be issued except on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.   (Fourth Amendment, U. S. Constitution.)

A warrant which shall run outside of the district in which it is issued should not be issued. (United States v. Pope, Fed. Case No. 16069; United States v. Haskins, Fed. Case No. 15322.)

## ADJOURNMENTS.

Commissioners may adjourn or suspend hearings and grant continuances of the examination in their discretion. (Rice v. Ames, 180 U. S. 377.)

## TEMPORARY COMMITMENT.

A commissioner should not commit to jail for part of a day. (United States v. Worms, Fed. Case No. 16768.)

Only one commitment is necessary although defendant be held for two or more offenses. (5 Comp. 320 Inst. 1002.)

That two or more defendants are arrested under the same warrant does not make it the duty of the commissioner to commit them jointly under the same commitment, but it is not proper to issue a new commitment upon taking an adjournment. (McGowan v. United States, 102 Fed. 553.)

## SUBPOENA.

Commissioners have power to issue subpœnas, but in New York a subpœna is not valid outside the county of his residence. (United States v. Beavers, 125 Fed. 778; United States v. Stern, 177 Fed. 479.)

## FINAL BAIL.

Where a commissioner has finally committed a defendant for trial he is without authority to order his removal from one jail and recommit him to another (9 Comp. 11, Inst. 1004.)

## BAIL.

Commissioners have the same power to take bail upon an arrest after an indictment as they have in cases of arrest made before indictment. (Hoeffner v. United States, 87 Fed. 185.)

A commissioner may take bail from a defendant who has been arrested upon a *capias* or commit him in default of bail unless such *capias* contains a *mittimus*. (8 Comp. 414 Inst. 1003.)

Commissioner can take bail for the appearance before him at a future day of a person charged with a crime against the United States only where the State Law provides for such procedure in the case of an offense against the State. (United States v. Case, Fed. Case No. 14742.)

## EXCESSIVE BAIL.

It is substantially a denial of bail and a violation of the constitutional guaranty against excessive bail to require a larger sum than, from his cir-

cumstances, the prisoner can be reasonably expected to give. (United States v. Brauner, 7 Fed. 86.)

The commissioner has no authority to commit a witness after holding the defendant for trial, pending his appearance to testify before the grand jury or on the trial of an indictment, unless an order authorizing such committment be made by the district judge. (Sec. 848 R. S., U. S. Comp. St. [1913], Sec. 1452, Inst. 1020.)

It is in the discretion of the commissioner to take recognizances of defendants and witnesses recognized in previous cases for the same grand jury. (Hallett v. United States, 63 Fed. 817.)

CONTEMPT.

A commissioner has no power to punish for contempt. (Ex parte Perkins, 29 Fed. 900.)

He should report disobedience to his authority to the court. (In re Perkins, 100 Fed. 950; United States v. Beavers, 125 Fed. 779.)

Nor to arrest a witness who refuses to obey a subpœna and compel him to answer then and there for contempt. (In re Mason, 43 Fed. 510.)

STENOGRAPHER.

The commissioner has to pay his own stenographer for taking testimony and cannot charge the government for the transcript required to be furnished. (Inst. 1054, 4 Comp. 239, Inst. 1056.)

REOPENING CASE.

Having taken final action by recognizing the defendant to appear at court, a commissioner is without jurisdiction subsequently to reopen the case and discharge the defendant. (3 Comp. Dec. 209.)

EXTRADITION.

The Statute confers jurisdiction upon a United States commissioner to act in extradition cases. (U. S. Rev. St. [1878], Sec. 5270; Comp. St. [1901], 3591; Comp. St. [1913], Sec. 10110; see also Matter of Heilborm, 1 Park. Crim. [N. Y.] 429.)

A commissioner can issue a warrant which will run into another district, but the defendant cannot be returned to the commissioner who issued the warrant without a hearing in the district where he was arrested. (Inst. 10631, 194 U. S. 205.)

Only upon a complaint duly sworn to may the commissioner issue his warrant for the apprehension of the accused. (Ex parte McCabe, 46 Fed. 363.)

The Statute does not provide for the bailing of one arrested for an extraditable crime. (Matter of Carrier, 57 Fed. 578; In re Wright, 123 Fed. 463.)

Where the prisoner has been discharged on insufficiency of evidence, he may again be arrested and compelled to submit to a second examination. (In re Kelly, 26 Fed. 852.)

CHINESE EXCLUSION CASES.

Original jurisdiction to deport Chinese laborers "found unlawfully in the United States" is vested in the United States commissioner. (Ex parte Chow Chok, 161 Fed. 627.)

The jurisdiction of the commissioner is co-ordinate with the jurisdiction of the district court itself to sit in the first instance. (Jung Goon Tow v. United States, 13 Ariz. 255.)

The commissioner has no jurisdiction to cancel a certificate of residence on the ground of fraud. (In re See Ho How, 101 Fed. 115.)

Nor to order defendant found guilty to be imprisoned at hard labor for thirty days prior to deportation. (Lee Lung v. Patterson, 186 U. S. 168.)

Mere assertion of American citizenship does not deprive the commissioner of jurisdiction. (Chm Bak Kan v. United States, 186 U. S. 193.)

No wararnt of arrest for violation of the Chinese exclusion laws shall be issued by United States commissioners excepting upon the sworn complaint of a United States district attorney, assistant district attorney, collector, deputy collector, or inspector of customs, immigration inspector, United States marshal, or deputy United States marshal, or Chinese inspector, unless the issuing of such warrant of arrest shall first be approved or requested in writing by the United States district attorney in which issued. (Sec. 3, Act March 3, 1901, ch. 845; Comp. St. [1901], p. 1328; Comp. St. [1913], Sec. 4334, Inst. 1065.)

A commissioner has jurisdiction to make an order of deportation under Section 6 of the Act of May 5, 1892, and also to order the deportation of Chinese persons who are adjudged to have unlawfully entered the United States. (In re Tsu Tsee Mee, 81 Fed. 562.)